STATE of Missouri, Respondent,

v.

Walter L. HARVEY, Jr., Appellant.

No. 66264.

Supreme Court of Missouri,
En Banc.

June 25, 1985.

C.J. Larkin, Asst. Public Defender, Columbia, for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Walter Harvey appeals a final judgment entered after a jury verdict finding him guilty of capital murder, section 565.001, RSMo 1978, and fixing his punishment at death, section 565.008.1, RSMo 1978. The dispositive question is whether the nonparticipation of defense counsel at trial deprived defendant of his right to effective assistance of counsel guaranteed by the sixth amendment. Reversed and remanded.

The evidence supports defendant's conviction for the murder of Gary Decker. It established that defendant, a 23-year-old black male, and Raphael Clark abducted

Decker and his wife Donna from the parking lot of a department store. Defendant and Clark forced the Deckers into their own car at gunpoint, shooting and killing Gary Decker shortly thereafter. The pair then held Donna Decker captive for almost one hour while they raped and sodomized her. She was then shot four times in the head and face and killed as she lay on the ground. Clark and defendant stole the Deckers' car, money and items of personal property. Donna and Gary Decker were found in a field in East St. Louis, Illinois, the morning of December 15, 1982.

John M. Walsh first appeared as attorney for defendant September 28, 1983. He filed a request for discovery, as well as motions to suppress evidence, identification and statements. On January 18, 1984, the trial was peremptorily set for April 23, 1984. Defense counsel argued his motions to the court March 15; the court later overruled the motions. At the motion hearing, Walsh requested a continuance of the cause, citing inadequate opportunity to consult with his client. The trial judge denied the request. Four days later, defendant requested a change of counsel and a continuance; defendant subsequently withdrew his request. On April 23, 1984, the prosecuting attorney and defense counsel stipulated to a continuance of the trial until May 21, 1984, a change of venue to Boone County for the purpose of jury selection and transportation of the jurors so selected to St. Louis County for trial to be conducted in the St. Louis County Courthouse.

On May 22, 1984, prior to jury selection, defense counsel orally requested another continuance. As grounds for his motion, defense counsel stated he was "totally unprepared to begin with this case." The court granted counsel leave to file written motions late and denied the continuance. Defense counsel questioned the jury panel but upon completion of voir dire refused to exercise defendant's right to peremptory challenges. Counsel renewed his motion for continuance or, in the alternative, mistrial, and upon its denial announced:

[I]f we are going ahead with this trial, ... I will be physically present because I am sure the Court would require that, but I do not in any way intend to participate in the trial of this matter.

In support of his request, counsel again asserted he was unprepared due to his involvement in an earlier capital murder case, and physically exhausted. He attended the trial but refused to participate in the proceedings.

In its denial of defendant's motion for new trial, the trial court found that defense counsel and defendant engaged in a deliberate trial strategy of nonparticipation, and concluded that the verdict, sentence and judgment "should not be set aside because of an unsuccessful trial strategy." In urging affirmance of the trial court, the State characterizes the conduct of defense counsel as an intentional strategy that, although admittedly improper and unethical, was rational and competent under the circumstances of this case. Appellant contends that if total nonparticipation can be considered a trial tactic, it is neither rational nor understandable. Appellant further contends that there is no evidence defendant acquiesced in his attorney's conduct and that counsel's actions effected a *per se* denial of defendant's sixth and fourteenth amendment rights. Because of this Court's resolution of the ineffective assistance claim, it is unnecessary to consider appellant's additional charges that death qualification of the jury panel created a conviction-prone jury, and the death sentence imposed is excessive and disproportionate to the punishment imposed in similar cases.

■ The due process clauses and the sixth amendment guarantee an accused a fair trial. U.S. Const. amend. VI & amend. XIV. An essential element of a fair trial is the assistance of counsel, elevated to constitutional dimension by the sixth amendment. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Courts uniformly recognize that the mere presence of an attorney in the courtroom is insufficient; the right to counsel means the

right to effective assistance of counsel. *Id.* *Evitts v. Lucey,* —— U.S. ——, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 104 S.Ct. at 2064.

Typically a defendant who raises an ineffective assistance claim must show both that counsel failed to provide reasonably effective assistance and that his defense was thereby prejudiced. *Strickland,* 104 S.Ct. at 2067–2071; *Burton v. State,* 641 S.W.2d 95 (Mo. banc 1982). Notwithstanding this general standard, a defendant who demonstrates a complete denial of any assistance of counsel need not satisfy the second prong of the inquiry. Denial of the assistance of counsel may occur when an attorney is present but refuses to assume the role of advocate, as well as when there is no appointment of counsel. *See Javor v. United States,* 724 F.2d 831 (9th Cir.1984). "Prejudice in these circumstances is so likely that case by case inquiry into prejudice is not worth the cost." *Strickland,* 104 S.Ct. at 2067.

Thus in *Martin v. Rose,* the court held the nonparticipation of defense counsel constituted a violation of the constitutional right of effective assistance of counsel without any showing of prejudice. 744 F.2d 1245 (6th Cir.1984). The court noted that the failure of defense counsel to cross-examine any witnesses, object to any evidence, call witnesses for the defense or argue to the jury undermined the traditional adversary process. *See United States v. Cronic,* —— U.S. ——, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984) ("if counsel entirely fails to subject the prosecution's cause to meaningful adversarial testing, then there has been a denial of sixth amendment rights that makes the adversary process itself presumptively unreliable."). Similarly, the court in *State v. Lamoreaux,* 22 Ariz.App. 172, 525 P.2d 303 (1974), held the nonparticipation of defendant's attorney in the trial was ineffective assistance of counsel requiring reversal of the conviction. The court reasoned that where the attorney refused to make an opening statement or a closing argument, cross-examine witnesses or present any defense, the result was as if defendant had no counsel. The court concluded that "under the principles of fair play and inherent justice, based upon the adversary system, Lamoreaux under the circumstances here has not had his day in court." *Id.* 525 P.2d at 306. Citing *Lamoreaux* with approval, the court in *People v. McKenzie,* 34 Cal.3d 616, 194 Cal.Rptr. 462, 668 P.2d 769 (1983), found reversal necessary after defense counsel refused to take part in the trial. The trial court denied counsel's motions to set aside the information, for a new preliminary hearing, and for a continuance; counsel argued that as a result of these rulings he was unable to represent his client and declined to participate beyond being present. The court held that an attorney cannot respond to unfavorable rulings with a refusal to provide effective assistance, but must proceed while utilizing available procedures to challenge rulings of the trial court. *Id.* 194 Cal.Rptr. at 472–473, 668 P.2d at 779–780. *See People v. Coss,* 45 Ill.App.3d 539, 4 Ill.Dec. 220, 359 N.E.2d 1172 (1977).

Application of the foregoing standard is appropriate in the facts and circumstances of this case. The State concedes that after voir dire defense counsel "effectively boycotted the trial proceedings." He made no opening or closing statements to the jury; presented no evidence for the defense; conducted no cross-examination of any of the State's 40 witnesses, and; submitted no instructions. The State introduced over 100 exhibits without objection. With the exception of one motion for mistrial based on the testimony of an expert witness, the State presented its case to the jury without interruption. The jury found the defendant guilty as charged of capital murder.

During the penalty phase of the trial, where effective representation is equally important, *Pickens v. Lockhart,* 714 F.2d 1455 (8th Cir.1983), defense counsel presented no evidence in mitigation of pun-

ishment. He submitted no mitigating factors for the jury to consider. Defense counsel moved for a mistrial based on the closing argument of the State but did not argue on behalf of his client. The jury imposed a sentence of death. Except for participation during voir dire and the filing of various post-trial motions, defendant's attorney sat mute at the counsel table for a substantial portion of his client's capital murder trial.

The State argues that similar facts did not lead to a finding of ineffective assistance of counsel in *Thomas v. State*, 475 S.W.2d 98 (Mo.1971), and *Lahmann v. State*, 509 S.W.2d 791 (Mo.App.1974). Both cases involve nonparticipation by counsel but each is distinguishable from this case. The court in *Thomas* framed the issue as whether ineffective assistance of counsel resulted when "as a matter of trial strategy with the express approval of the accused," counsel failed to actively represent his client. 475 S.W.2d at 99. Unlike the trial court here, the court there directly inquired of the defendant whether he discussed the strategy with his attorney and agreed with the course of action adopted. The express consent of the defendant also distinguishes *Lahmann,* where the court found the defendant directed his attorney to remain silent during the trial and not protest certain rulings of the trial court.

Here, the only evidence the State offers in support of its contention that defendant joined in the nonrepresentation by his attorney is an exchange between the prosecutor and the court during the hearing on defendant's motion for new trial. In response to the motion, the prosecutor testified that when the trial judge asked defense counsel earlier if the refusal to participate was his client's idea, counsel replied that "he had discussed it with his client and this was the way they were going to proceed and his client agreed with this." The question was not put to defendant. The record also reveals that defendant at the outset requested removal of his attorney and appointment of new counsel, which motion he later withdrew. Prior to sentencing, defendant stated that he accepted his attorney at the urging of his mother, but had no opportunity to confer with him and believed him unprepared. On this record the Court is unwilling to hold appellant responsible for the unconscionable conduct of his attorney, regardless of the lack of objection to that conduct during trial. *See McKenzie*, 668 P.2d at 783; *Lamoreaux,* 525 P.2d at 305. The course of action undertaken appears not as the result of a knowing exercise of the right to counsel but rather as a denial of that right.

■ The Court is cognizant of the presumption of correctness accorded findings of fact and conclusions of law of the trial court, *Knight v. State*, 491 S.W.2d 282 (Mo.1973), but must conclude that defense counsel's nonparticipation constructively deprived appellant of his constitutional right to effective assistance of counsel. Faith in the capacity of a trial to produce a reliable determination of guilt or innocence, or a just punishment, derives in large measure from confidence in the adversarial process. *Strickland,* 104 S.Ct. at 2069. *See Cronic,* 104 S.Ct. at 2044–2047. Where as here an attorney totally abdicates his role in the process, the result is suspect, *see Martin,* 744 F.2d at 1250, and the defendant is entitled to a new trial.

This Court does not believe that this reversal will encourage repetition of the conduct condemned. Appropriate support may be found in *Martin* where the Sixth Circuit noted that a trial court can meet the threat of nonparticipation by ascertaining if the defendant is knowingly and understandingly waiving his right to effective assistance of counsel. In appropriate cases, the court's contempt power or the attorney disciplinary mechanism may be invoked. 744 F.2d at 1251–1252.

The judgment of the trial court is reversed and the cause remanded for a new trial.

RENDLEN, C.J., BILLINGS, WELLIVER, JJ., and TURNAGE, Special Judge, concur.

BLACKMAR, J., concurs in separate opinion filed.

DONNELLY, J., dissents in separate opinion filed.

GUNN, J., not sitting.

BLACKMAR, Judge, concurring.

I believe that the principal opinion properly responds to the issue of defendant's counsel's refusal to participate in the trial.

By reason of § 565.014, RSMo 1978, initial appellate jurisdiction is vested in this Court and we have not only the authority but the duty to decide all issues properly presented by the case, including issues arising under the Constitution and laws of the United States.

A collateral attack under 28 U.S.C. § 2254 is appropriate only when the remedies provided by state law have been exhausted. The statute reads in pertinent part as follows:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

\*  \*  \*  \*  \*  \*

The procedure suggested by the dissent could produce a procedural treadmill which we should avoid by deciding the matters properly brought before us.

DONNELLY, Judge, dissenting.

I question whether an accused charged with a capital offense can waive the right of assistance of counsel. *Cf.* § 600.051, RSMo 1978.

I question also whether an accused charged with a capital offense (or any other felony) can be held to have waived the right to *effective* assistance of counsel.

Heretofore, this Court has held the view that claims of ineffective assistance of counsel are best handled under Rule 27.26. *State v. Mitchell,* 620 S.W.2d 347 (Mo. banc 1981). However, this is a death penalty case. In my view, it raises a very important issue: May an accused and his counsel engage in a deliberate trial strategy of nonparticipation and thereby assure the reversal of a conviction?

I would step aside and give Harvey the opportunity to proceed immediately to the remedy of habeas corpus provided by 28 U.S.C. § 2254. If and when his conviction and sentence remain intact, we can re-address this appeal and review the sentence of death as required by § 565.014, RSMo 1978.

I recognize, of course, that at some point in time we must address all issues "in all cases where the punishment imposed is death." Mo. Const. art. V, § 3. However, "the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice \* \* \*." *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). And, "[t]he Due Process Clause of the Fifth Amendment does not establish any right to an appeal \* \* \* and certainly does not establish any right to collaterally attack a final judgment of conviction." *United States v. MacCollom,* 426 U.S. 317, 323, 96 S.Ct. 2086, 2090, 48 L.Ed.2d 666 (1976).

In my view, we should exert every effort to improve post-conviction review in death penalty cases. "[I]t is difficult to explain why a system of criminal justice deserves respect which allows repetitive reviews of convictions * * * where the basis for re-examination is not even that the convicted defendant was innocent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 275, 93 S.Ct. 2041, 2072, 36 L.Ed.2d 854 (1973) (Powell, J., concurring).

I respectfully dissent.