**STATE of Missouri, Respondent,**

v.

**Michael L. WILSON, Appellant.**

**No. WD 37706.**

Missouri Court of Appeals,
Western District.

May 5, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 30, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Michael Wilson appeals his jury conviction for stealing over $150. As a prior offender he was sentenced to four years. The sufficiency of the evidence is not at issue—summarized it shows six cases of phono records were taken from a warehouse. Wilson, who delivered items to the warehouse was seen at an area where he had no reason to be, the records were found missing, and Wilson told an investigator and wrote a statement that he had taken the records because he needed the money.

Wilson, in two points, claims the failure of the trial court to grant him a continuance effectively denied him the effective assistance of counsel.

Some background information is first in order. At the outset defendant's trial counsel noted "this is an old case." It was first on the docket on April 1, 1985. Wilson's first attorney set up a guilty plea hearing four days prior to trial. The attorney showed—but not Wilson. When Wilson didn't show on April 1 his bond was forfeited. He has been jailed ever since. The private attorney was then allowed to withdraw following Wilson's complaints

that all the attorney wanted to do was enter a plea. Wilson's present counsel, the Public Defender, was then appointed. Two months later, on July 29th the case came up on the trial docket but was not reached. It was reset the week of August 12th and the Defender's office notified the case was set for August 15th, but the court was advised by the Defender to prepare for a guilty plea by Wilson. Unknown to assistant defender Berrigan, on August 2nd Wilson had written a personal letter to the court complaining among other reasons, the Defender was in concert with the prosecutor and only wanted to plead the client guilty. Defender Berrigan later stated Wilson had told him on July 29th of Wilson's intent to plead. Berrigan went on vacation, came back expecting only to appear for a guilty plea but due to Wilson's *pro se* letter to the judge, the court would not accede to Wilson's change of course to then enter a plea.

It is obvious from this scenario Berrigan, who was engaged in other court cases, never had any reason to believe his client wanted the case to be tried. It was Berrigan's purpose to accommodate his client by waiting until trial to plead his client. Wilson wanted to wait to plead as long as possible so he could stay in the Jackson County Jail and be close to his family. The morning of trial Berrigan was advised of the Wilson letter, and he and the client were advised trial was to commence. The trial court would not, after Wilson's letter, then accept his then expressed desire to plead. Berrigan asked for a 30 minute recess to talk to his client—the court gave him five minutes and told him to talk to Wilson after voir dire, which was completed at 3:30 in the afternoon. At that point Berrigan requested a continuance until 9:00 o'clock the next morning so, "he could be prepared to try it...." The continuance was denied, the state put on its evidence in an hour, without cross-examination. The defendant made no opening or closing statement. A record was made in which Berrigan participated, after which Wilson decided to not take the stand. The defendant presented no evidence and the next

morning instructions were read, the jury deliberated less than one hour.

At trial and on appeal counsel has referred to the requests for delay as ones for a continuance. Rule 24.09 mandates an application for a continuance to be made in a written motion accompanied by affidavit. Under the Rule the defendant's requests were clearly subject to denial. *State v. Counts,* 693 S.W.2d 143, 144 (Mo.App. 1985). Even if the requests had been in proper form for a continuance, it could have been within the discretion of the trial court whether to grant a continuance, and absent a very strong showing of abuse the denial would not be overturned on appeal. *State v. Casey,* 683 S.W.2d 282, 285 (Mo. App.1984).

By calling counsel's requests as being for a "recess" as opposed to a continuance does not alter the scope of appellate review of the discretionary act by a trial judge. A trial court has broad discretion in granting recesses or temporary adjournments, *Kronmueller v. Wipperman,* 129 S.W.2d 43, 48 (Mo.App.1939), and will not be reversed absent an abuse of discretion. *Smith v. Hofer, Inc.,* 701 S.W.2d 451, 456 (Mo.App.1985). "A trial court possesses considerable discretion in matter concerning the conduct of the trial." *State ex rel. State Highway Commission v. Select Properties, Inc.,* 612 S.W.2d 866, 871 (Mo. App.1981).

A party complaining about a ruling on a recess must show the suffering of prejudice by the court's decision to obtain a reversal. *Lipari v. Volume Shoe Corporation,* 664 S.W.2d 953, 959 (Mo.App.1983). Prejudice or oppression in denial of a recess usually occurs in a situation where a vital witness is temporarily unavailable, *Nichols v. The Headley Grocer Company,* 66 Mo.App. 321 (1896), or where evidence comes in by surprise that changed testimony as to causation and nature and extent of injuries that should allow a defendant time to examine that evidence. *Wintz v. Hyatt Hotels Corporation,* 687 S.W.2d 587, 591 (Mo.App.1985).

As to what prejudice resulted from the denials, counsel was asked what he would have done overnight to have prepared. The answer was to prepare sufficient cross-examination of the state's witnesses and conduct investigation. Again, the defendant finally elected not to take the stand. The state's case consisted of the following: The operations manager of the warehouse from where the property in question was stolen testified he saw the defendant's vehicle (Wilson worked for a contract delivery firm) parked in a place he had no right to be, with the hatch of his vehicle open. A short period of time later three boxes of records were found stolen and a report made to the police. A private investigator for the company questioned the defendant about the theft. The defendant told of taking the property and, in his own handwriting made a statement, introduced in evidence, which said he stole the items, took them to a private storage bin and never intended to pay for the records.

It is hard to imagine what preparation or trial strategy could have been accomplished in the time counsel asked for. Had the court granted the continuances or recesses requested it is impossible to say what counsel could have done to be "prepared." Without any showing of prejudice, whether the request was for a continuance or recess, the defendant cannot show an abuse of discretion in the denial of his requests. As noted earlier, a very strong showing of prejudice is required to show abuse of discretion in the denial of a continuance. *State v. Cuckovich,* 485 S.W.2d 16, 21 (Mo. banc 1972), and Wilson bore, but did not sustain that burden here. *State v. Nave,* 694 S.W.2d 729, 735 (Mo. banc 1985).

Even if prejudice could be found in this factual context, the defendant has no one to blame but himself, if he was truly left without meaningful representation of counsel. Wilson's own activity made any defense of his case impossible. He was merely playing the system, its a shame he had to use the time of two competent attorneys to equivocate and delay. The Defender in this case was left in an untenable situation by the client he was appointed to defend. *State v. Harvey,* 692 S.W.2d 290 (Mo. banc 1985), relied on by Wilson stands

on a different factual basis. In *Harvey* counsel was unprepared and requested a continuance because he was involved in another trial and was exhausted. In the case at bar the client at every step of the way told this lawyer, as he had done with previous counsel, the case was not to be tried but was for a plea. At the eleventh hour the Wilson changed his mind without telling counsel—the client here unilaterally and expressly said he didn't want this lawyer, then showed up in court, again changed his mind wanted to plead guilty, and then asked for a continuance, and now claims counsel didn't adequately represent him. In *Harvey, supra,* the court distinguished cases dealing the lawyer non participation with the "express approval," or with the "express consent" of the client. *Id.* at 293. Wilson's action here was solely responsible for the caliber of his representation. Further, the court did not err in refusing to accept the guilty plea.

In his final point, Wilson seeks review of the instructions which defined reasonable doubt. MAI–Cr 2d 1.02 and 2.20. This point is without merit having been rejected in numerous cases, including, *State v. Turner,* 705 S.W.2d 108, 110 (Mo.App. 1986).

The judgment of conviction is affirmed.

KENNEDY, Judge, dissenting.

I respectfully dissent. It seems to me that our decision is in direct and irreconcilable conflict with *State v. Harvey,* 692 S.W.2d 290 (Mo. banc 1985), and with *State v. Jackson,* 344 Mo. 1055, 130 S.W.2d 595 (1939). Defendant was put on trial without any meaningful representation by counsel. Prejudice is presumed in such cases.

I have recast the facts as follows, in order to present defendant's point, namely, that the court's denial of a continuance for the purpose of allowing his attorney time for preparation for trial effectively deprived him of his Sixth Amendment right to effective legal representation:

Defendant was represented by the Jackson County Public Defender's office, particularly by Mr. Patrick Berrigan, a staff attorney of that office. Defendant had told Mr. Berrigan that he intended to plead guilty to the charge. A plea bargain was struck and the prosecutor had agreed to recommend a sentence of four years' imprisonment. Mr. Berrigan made no preparation for trial.

Defendant, who was in jail in default of bond, wanted to remain in Jackson County as long as possible in order to remain accessible to his family. To accommodate defendant's desires in this matter, it was Mr. Berrigan's purpose to wait until the trial date to enter the guilty plea, rather than to dispose of the case earlier. There is no indication that the trial judge knew before the day of trial that the defendant intended to plead guilty, although the prosecuting attorney had been advised.

The case was set for trial for August 15, 1985, in Division 10. Berrigan, returning from a two-week vacation, learned of the setting in the evening of August 14. On the morning of August 15 at about 8:45 o'clock he telephoned the court clerk of Division 10. He arranged with the clerk to have the defendant present at 2:30 p.m. of that day to enter the guilty plea.

Berrigan then went to Independence where he was slated to be in court. While there during the morning he received a telephone call that he was to return to Kansas City to Division 10 to try the Wilson case. Probably during this telephone call, or perhaps when he arrived at Division 10 (the record indicates the time was approximately 11:30 a.m.), he learned that the judge would not accept Wilson's plea of guilty. The judge's refusal to accept the guilty plea was based upon a motion which Wilson had filed pro se without Berrigan's knowledge. This motion requested the appointment of new counsel, on the ground that defendant felt that Berrigan would not represent him vigorously— "[t]hat on every interview Mr. Berrigan talks nothing but how defendant should agree to any plea bargain offered by the prosecutor," and "[t]hat defendant feels that his present counsel is working in

concert with the prosecutor". Wilson withdrew this motion at the beginning of the trial, and reiterated his desire to enter a guilty plea, but the trial judge declined to accept it and insisted upon an immediate trial.

Berrigan pleaded his lack of preparation and asked for a 30–minute recess to talk with the defendant. The court allowed five minutes for that purpose, telling Berrigan he could talk with his client after voir dire was completed. The jury selection process began at once. Presumably a luncheon break was later taken. At 3:30 o'clock p.m. the jury selection process had been completed and proof of the defendant's prior convictions had been made to the court. Mr. Berrigan then requested a continuance until the next morning at 9:00 o'clock a.m. The stated ground for his request was that he was not prepared for trial, but he expected he "could be prepared to try it as early as tomorrow morning". The request for the continuance was overruled. The trial proceeded. The prosecutor's opening statement and the presentation of the evidence took an hour. Mr. Berrigan was present but made no opening statement and did not cross-examine the state's witnesses. He had explained to the court in connection with his continuance applications that he was unprepared to do so. Defendant offered no evidence. The trial was adjourned until the following morning at 9:00 o'clock a.m., when the instructions were read to the jury and the state made its argument. No argument was made in defendant's behalf. The jury retired at 10:45 a.m. and returned with its verdict at 11:33 a.m.

The majority says that "even if prejudice could be found in this factual context", "if (defendant) was truly left without meaningful representation by counsel" he has "no one to blame but himself"—that he was "merely playing the system". I am unable to put such an egregious construction upon defendant's conduct. In case after case we see similar efforts at self-help by an accused, usually ill-advised, nearly always ineffective, but when have we ever held that

he thereby forfeited or waived his right to effective legal representation? The law in its majesty and its might has a variety of less heavy-handed methods with which to deal with obstructive conduct, if defendant's actions can be so characterized, without stripping him of a basic constitutional right.

The state argues in its brief that "no prejudice is discernible from the record, since it is undisputed that the appellant was guilty and, in fact, attempted to plead guilty to the charge." The majority opinion says: "It is hard to imagine what preparation or trial strategy could have been accomplished in the time counsel asked for. Had the court granted the continuances or recesses requested it is impossible to say what counsel could have done to be 'prepared'."

This falls with a strange and jarring sound upon the ear. Implicit in this is the idea that if *after the trial* it appears from hindsight that the accused's defense would have been hopeless, then it does not matter that his counsel was unprepared for trial.

When the court declined to accept defendant's guilty plea, he went to trial upon a plea of not guilty. He was clothed with the presumption of innocence. It was up to the state to prove him guilty beyond a reasonable doubt. The jury was not obliged to believe the state's evidence. The defendant was entitled to the best defense possible, even though it may seem *in retrospect* that he had only the dimmest prospects for an acquittal. We have learned to be wary of a verdict based upon evidence which is unresisted and untested in adversarial fire.

Descending from that lofty plane to the technicality of the absence of a written and sworn request for a continuance: The absence of a sworn writing did not by itself justify the denial of the request. What the defendant requested was not a continuance within the meaning of Rule 24.09, but was merely a recess or an adjournment of the trial without aborting the trial or the trial setting. It is treated as a trial incident, rather than as a "continuance". *Louisville*

*and Southern Indiana Traction Co. v. Montgomery,* 186 Indiana 384, 115 N.E. 673, 675 (1917); *State v. Smith,* 665 S.W.2d 663, 666 (Mo.App.1984); *State v. Cook,* 637 S.W.2d 110, 111 (Mo.App.1982); *Bezat v. Home Owners Loan Corporation,* 55 Ariz. 85, 98 P.2d 852, 855 (1940). *See generally* 88 C.J.S. Trial § 45 (1955).

I would reverse and remand for a new trial.