STATE of Missouri, Respondent,

v.

Larry SCHAAL, Appellant.

Larry SCHAAL, Appellant,

v.

STATE of Missouri, Respondent.

No. 73111.

Supreme Court of Missouri,
En Banc.

April 9, 1991.

Rehearing Denied May 3, 1991.

Blackmar, C.J., withdraws Concurring Opinion previously filed and files Modified Concurring Opinion.

Judith LaRose, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

At issue in this case is the constitutionality of Section 492.304, RSMo 1986, which permits the trial court to admit into evidence a statement of a child victim of specified crimes. Convicted of rape, in violation of Section 566.030, RSMo 1986, appellant Schaal claims that Section 492.304 is facially unconstitutional in that it violates his rights to confrontation and due process as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United

States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution. In addition, Schaal contends that Section 492.304 is unconstitutional as applied in this case in violation of his rights to confrontation under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 10(a) of the Missouri Constitution. While these constitutional challenges form the basis for our original appellate jurisdiction, Mo. Const. art. V, sec. 3, Schaal raises two additional points, the first assigning error to the trial court's refusal to continue the trial and the second challenging the sufficiency of the evidence to support his conviction. We also address his appeal of the denial of his Rule 29.15 motion, which is consolidated with the appeal on the merits of the conviction.

The judgments of the trial court and the post-conviction hearing court are affirmed.

## I.

We view the facts in the light most favorable to the verdict. *State v. Brown*, 660 S.W.2d 694, 699 (Mo. banc 1983). Schaal began dating L.L. in July, 1986. Seeing L.L. daily for almost three months, Schaal also developed a close relationship with L.L.'s two daughters, L⎯, then age 7, and M⎯, then age 3. Appellant became very possessive of L⎯, frequently requesting that she sit on his lap. Once, when Schaal, L.L. and her daughters went camping, Schaal wrapped his nude body around L⎯ as she slept. On another occasion, appellant placed his finger in L⎯'s vagina and sexually molested her sister, M⎯.

One weekend in early October, 1986, L⎯ spent the night with Schaal at his home. While L⎯ was taking a bath, Schaal came to the bathroom door and threw a towel onto the toilet. L⎯ got out of the tub, put on the towel, and came into the kitchen where Schaal had gone. Schaal told her to take off her towel; she refused. Schaal then removed L⎯'s towel as well as his own clothes and had sexual intercourse with her. The next day, L⎯'s mother discovered blood on L⎯'s underwear.

On October 17, Schaal showed L⎯'s mother pictures he had taken earlier of both L⎯ and M⎯. These pictures included depictions of L⎯ posing in her underwear and one of L⎯ sitting nude in a chair, with "her legs drawn up and her privates ... showing." Upon seeing the pictures, L.L. became very upset and terminated her relationship with Schaal three days later.

On November 21, 1986, a pediatrician examined L⎯. The physician found that L⎯'s vaginal area was abnormal in that her vaginal opening had been stretched and her hymen was stretched and torn. These physical manifestations indicated that L⎯ had been penetrated.

On December 1, 1986, L⎯ began counseling with Dr. Herndon Snider, a psychologist. On April 28, 1987, Dr. Snider made a video tape in which L⎯ told of her sexual intercourse with appellant. No attorney was present at the making of the tape; only L⎯ and Dr. Snider could be seen or heard on the tape, although L⎯'s mother, L.L., was present in the room as the video was made. At one point near the end of the interview, the video tape was stopped and reviewed by L⎯. Dr. Snider then restarted the tape and L⎯ told of the pictures Schaal had taken of her as well as his earlier molestation of her sister, M⎯, and herself. The record reveals that several days before the making of this video tape, Dr. Snider had tried to video tape an interview with L⎯. That effort ended without a usable video tape being made, as L⎯ was uncomfortable discussing these topics before a camera. Dr. Snider recorded the second video tape over the aborted first recording.

Schaal moved to suppress the admission of the video tape. At a pretrial hearing, the trial court viewed the tape and made a finding that the requirements of Section 492.304 had been met. The trial court also found that L⎯ had not been led to make any particular statement. Based on these findings, the trial court overruled Schaal's motion to suppress the video tape. At trial, the prosecution played the tape a single time for the jury. Although L⎯ was available to testify, neither the state nor Schaal

sought her live testimony. Dr. Snider did testify at the trial.

The jury convicted Schaal of rape. The trial court, having found Schaal a prior offender, Section 558.016.2, RSMo 1986, and on the strength of Schaal's prior conviction for attempted rape, a persistent sexual offender, Section 558.018.2, RSMo 1986, sentenced Schaal to thirty years imprisonment without possibility of parole. Schaal appealed. He also filed a timely Rule 29.15 motion, which the motion court overruled. The appeals are consolidated for review purposes here.

## II.

### Direct Appeal

#### A.

Section 492.304, RSMo 1986, states:

1. In addition to the admissibility of a statement under the provisions of section 492.303, the visual and aural recording of a verbal or nonverbal statement of a child when under the age of twelve who is alleged to be a victim of an offense under the provisions of chapter 565, 566 or 568, RSMo, is admissible into evidence if:

(1) No attorney for either party was present when the statement was made;

(2) The recording is both visual and aural and is recorded on film or videotape or by other electronic means;

(3) The recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and has not been altered;

(4) The statement was not made in response to questioning calculated to lead the child to make a particular statement or to act in a particular way;

(5) Every voice on the recording is identified;

(6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;

(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence, and

(8) The child is available to testify.

2. If the electronic recording of the statement of a child is admitted into evidence under this section, either party may call the child to testify and the opposing party may cross-examine the child.

3. As used in this section, a nonverbal statement shall be defined as any demonstration of the child by his or her actions, facial expressions, demonstrations with a doll or other visual aid whether or not this demonstration is accompanied by words.

#### 1.

■ First, Schaal argues that his inability to cross-examine L— at the time of the making of the videotape violates the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution. The Sixth Amendment, as applied by the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), guarantees appellant the right "to be confronted with the witnesses against him." Article I, Section 18(a) of the Missouri Constitution provides, "That in criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face." The confrontation rights protected by the Missouri Constitution are the same as those protected by the Sixth Amendment of the United States Constitution. *State v. Hester*, 801 S.W.2d 695, 697 (Mo. banc 1991).

Appellant relies on *Maryland v. Craig*, — U.S. —, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), and *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). In *Coy*, the court found that an Iowa statute permitting a child victim to testify behind a screen, out of direct sight of the defendant, violated the Sixth Amendment. *Craig* held that the Sixth Amendment right of confrontation is not absolute and may be abridged when "necessary to further an important public policy [*but*] only where the reliability of the testimony is otherwise assured."

*Craig*, —— U.S. at ——, 110 S.Ct. at 3166. *Craig* upheld a statute permitting a child witness to testify from outside the courtroom, following a finding by the trial court that the child would be so emotionally distressed as to be unable to communicate in the presence of the defendant. —— U.S. at ——, 110 S.Ct. at 3161.

■ In this case, appellant argues that section 492.304 is unconstitutional because it requires no special finding that the child would be disabled by emotional distress. *Coy* and *Craig* are inapposite. Those cases illuminate the extent of the right to confrontation *at* trial. This case involves a different factual milieu. Here we consider the use of an out of court statement where the witness is fully available at trial. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) addresses this question more directly:

> Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

> It is, of course, true that the out-of-court statement may have been made under circumstances subject to none of these protections. But if the declarant is present and testifying at trial, the out-of-court statement for all practical purposes regains most of the lost protections.

*Id.* at 158, 90 S.Ct. at 1935 (1970) (quoting 5 Wigmore § 1367). Although this case does not involve the use of an *out-of-court inconsistent statement*, we do not believe it is of constitutional significance that the out-of-court statement at issue here was not used for impeachment purposes. *See also State v. Bowman*, 741 S.W.2d 10 (Mo. banc 1987), *cert. denied*, 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 60 (1988). (The trial court admitted a prior videotaped inconsistent statement of the witness into evidence where the witness was available and testified at trial.) Moreover, the witness here was available but was not called to testify. This distinction, however, is not significant; it is only the opportunity for effective cross-examination that must be afforded under the Sixth Amendment. *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987).

■ By any calculation, Section 492.304 satisfies a defendant's right to confrontation. The statutory requirement that the child witness be available to testify at trial, under oath, and subject to the fact finder's observation of demeanor, *Green*, 399 U.S. at 158, 90 S.Ct. at 1935, guarantees that right. The statute also ensures that the recorded statement is made without attorneys being present and without "questioning calculated to lead the child to make a particular statement or act in a particular way." Further, the jury is able to judge the videotaped, recorded testimony for themselves; they do not receive it second-hand. Appellant's facial Sixth Amendment attack is not valid.

### 2.

■ Appellant's contention that the statute facially violates his right to Due Process is also without merit. Citing a Texas case, *Long v. State*, 742 S.W.2d 302 (Tex. Crim.App.1987), he argues that the statute places an unfair burden upon the defendant in requiring him to call a child witness to testify when she is not called by the state. Schaal argues that he is thus permitted only direct, not cross, examination, in order to confront the witness regarding her recorded statement.

In the first place, the statute is neutral on the placement of a burden. Section 492.304 merely ensures the defendant the right to confront the hearsay declarant. But, appellant complains, a jury responds negatively to a vigorous examination of a child witness. This may be so. That concern, however, is inherent in the confrontation of a child witness irrespective of which party calls her to testify; that concern is not an exclusive result of the statutory

procedures. A defendant who fears the negative consequence inherent in vigorous questioning of a child may choose not to question the witness at all as a matter of strategy.

■ Finally, despite appellant's protestations to the contrary, a defendant is not confined to direct questioning by the statute. Any defendant retains the option upon calling a hostile witness to lay a foundation to show that the witness is indeed hostile. Upon that showing, a defendant may question the witness as though conducting cross-examination. *State v. Lupo,* 676 S.W.2d 30 (Mo.App.1984).

### 3.

We hold, therefore, that Section 492.304 embodies no clear violation of either the United States or Missouri Constitutions. Schaal's attack on the facial constitutionality of the statute is denied.

### B.

■ Appellant also argues that Section 492.304 is unconstitutional as applied in violation of his confrontation and due process rights. Specifically, appellant charges that: (1) the videotape was difficult to see and understand and the questioner repeated many of L—'s answers; (2) the videotape was stopped and restarted once, allowing L— to add accusations that she and her sister suffered earlier molestations; (3) L—'s statement was unsworn and she did not understand the purpose of the videotaping; (4) L—'s mother was in the room during the taping; (5) L— was asked leading questions on the tape; and (6), the tape was "altered" by being recorded over the unsuccessful initial taping three days earlier. Only points 5 and 6 have been preserved for appellate review. Aside from his objection to leading questions and to the retaping, appellant made only a general constitutional objection to the admission of the videotape, both at trial and in his motion for new trial. The other points have not been raised except on appeal and are not preserved. Rule 29.11. Therefore, this Court's review is for plain error; we will reverse only to prevent manifest injustice.

Rule 29.12. More than a mere showing of demonstrable prejudice is required as a basis for reversal under plain error. *State v. Hornbuckle,* 769 S.W.2d 89, 93 (Mo. banc), cert. denied, —— U.S. ——, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989).

### 1.

■ Regarding the quality of the tape, neither the visual nor audio was of high quality, but not to a degree to cause any prejudice to the appellant. Our own viewing of the tape confirms both its less-than-ideal quality and its ability to be understood. Nor has appellant shown manifest injustice in Dr. Snider's repetition of many of her answers, particularly in view of L—'s speech impediment. His comments were no more than verbatim repetitions of L—'s answers.

Appellant's contentions regarding L—'s mother's presence at the taping and L—'s having been unsworn are without merit; nor is there any merit in appellant's assertions regarding the stopping and starting of the videotape. To the extent that L— is available for live testimony, under oath, the "dangers of hearsay are largely non-existent." *Green,* 399 U.S. at 155, 90 S.Ct. at 1933. Neither prejudice nor any violation of the statute is shown.

■ Appellant asserts that L—'s statements about her prior molestation by appellant and concerning appellant's activities with her younger sister, were inadmissible as "evidence of other crimes not charged against appellant." L— stated that sometime before the rape appellant had "stuck his finger in my vagina" and that he had also "messed around with" her sister's vagina. Appellant's actions are admissible in this case. They show his motive, namely a desire for the victim, *State v. Graham,* 641 S.W.2d 102, 105 (Mo. banc 1982). They also show his common scheme or plan in molesting the daughters of his girlfriend. *State v. Taylor,* 735 S.W.2d 412, 417–18 (Mo.App.1987).

### 2.

Appellant assigns error to the admission of the tape into evidence, claiming that Dr.

Snider asked L— leading questions on the tape. Moreover, appellant argues that the tape was "altered" in violation of the statute. As we have said, the second interview was recorded over an earlier unsuccessful taping.

 At trial, Dr. Snider, the psychologist, identified himself and L— as the persons who appeared and spoke on the tape. The portion of the videotaped interview regarding the rape itself is as follows:

Q. And what did you all do first when you went over there?

A. He gave me a gummy bear.

Q. A gummy bear? Oh, Okay.

A. It was a green gummy bear.

Q. Yeah. And then what did you have?

A. Milk and cookies.

Q. Had some milk and cookies, Okay.

A. And then he told me to take a bath.

Q. Uh-huh, uh-huh.

A. And I did.

Q. So you went in and took a bath, uh-huh? Was he in the bathroom when you were in there?

A. He came at the door and throwed a towel on the toilet.

Q. Oh I see. Yeah. So he wasn't really in there, he just came to the door and threw the towel on the toilet.

A. He wasn't all the way in.

Q. What?

A. He wasn't all the way in.

Q. Wasn't all the way in. And so then what did you do?

A. Took a bath. Got out. I put my towel on. I went into the kitchen to see what he was doing.

Q. Um-hum, see what he was doing. Yeah, and what was he doing?

A. He was cooking supper.

Q. Yeah, right. And so did you have your clothes on then?

A. No, I just had my towel wrapped around me.

Q. Oh I see. And so, how was he dressed?

A. He had underwear on and socks.

Q. Just underwear and socks. And so then what did he do?

A. Told me to take off my towel.

Q. Told you to take off your towel? And what did you do?

A. I didn't.

Q. You didn't do it. So what did he say or do then?

A. He took the towel off.

Q. Um-hum. He took the towel off and then what?

A. He laid me on the floor and he laid me down.

Q. Uh-huh, and what did he do then?

A. He took off his clothes.

Q. He took off his clothes. And then what?

A. And then he raped me.

Q. What does that mean that he "raped" you? What did he do? That's kind of hard to talk about, isn't it? You have told me before that he had gotten on top of you, is that right?

A. Um-hum (nodding head).

Q. Uh-huh, and he didn't have any clothes on. And do you know what the word penis means?

A. (nodding head)

Q. Yeah, And he, uh, what its, what are, what is the penis?

A. It's the privates.

Q. Yeah, uh-huh, and what did he do with that?

A. He stuck it up my vagina.

In this exchange there is but one leading question. ("You have told me before that he had gotten on top of you, is that right?") This question came near the end of the statement and was offered more as a paraphrase of the description of rape which L— had already given. The trial court found that Dr. Snider tried to let the girl tell the story in her own words and that he had substantially succeeded. We agree with the trial court's conclusion that Dr. Snider's question was not calculated to lead the child to make a particular statement. The trial court did not err, therefore, in finding that the tape complied with the statute.

 Appellant also argues that the erasure and taping over of the earlier unsuccessful videotape is a direct violation of

Section 492.304 which provides that the videotape may not be "altered." The trial court did not admit the original recording, however. The statute does not address recordings not admitted into evidence. Accordingly, the taping over of the prior interview does not violate the statutory prohibition. The interview admitted into evidence was not altered. The point is denied.

### 3.

We hold that Section 492.304 was not applied unconstitutionally in this case.

### C.

Appellant's next point contends that the trial court abused its discretion in failing to grant his motion for continuance or in the alternative to allow the public defender to withdraw. Appellant contends that his trial counsel was not prepared for trial due to his caseload and that the lack of preparation violated his right to a fair trial.

The rape here occurred in October, 1986. The complaint was filed and public defender appointed in February, 1987. From then until May 1, 1987, the trial court continued the preliminary seven times, apparently due to questions about appellant's eligibility for public defender services and a conflict in the defender's office. The state filed the information on May 7; the trial court set the trial for June 25. Attorney Timothy Wynes of the Public Defender's office handled the preliminary hearing and initial trial preparation. From the outset, however, District Defender R.J. Gordon was designated the lead attorney in the case.

On June 4, the trial court at appellant's request continued the pretrial motion hearing, set for June 8. Again the public defender cited insufficient time to prepare. On June 16, the court sustained appellant's request for a speedy trial. That request was followed the next day with appellant's waiver of his right to a speedy trial. The trial court then granted appellant's request for a continuance and reset the trial for August 13, 1987. On July 28, appellant again filed a motion for continuance or in the alternative to allow the public defender

to withdraw. On July 29, the trial court conducted a hearing on the motion. The public defender, R.J. Gordon, explained that he needed a sixty day continuance because of new employees in his office and the press of business. He argued that he had personally worked only five hours on the case and needed to depose Dr. Snider and the victim's mother and also wanted to interview other potential witnesses. The court denied the continuance, but on August 10 sustained the state's motion for continuance due to the unavailability of a witness. Trial was reset for October 15, 1987. In late August, Timothy Wynes resigned his position, leaving R.J. Gordon as the only attorney on the case.

On October 2, 1987, appellant filed another motion for continuance or in the alternative to allow the public defender to withdraw. At the hearing on October 8 he offered the same reasons for the delay as he had given in July. He claimed to have spent only five hours on the case. Gordon made this claim despite the fact that he had personally deposed Dr. Snider, L___, L.L. and another person in August, prior to Wynes' departure. The trial court, noting the youth of the victim and the number of continuances already granted, overruled the motion. On the date of the trial, October 15, the public defender made an oral motion for a continuance. The trial court denied the motion and the trial commenced.

The decision to grant or deny a continuance is within the sound discretion of the trial court. A very strong showing is required to prove abuse of that discretion, with the party requesting the continuance bearing the burden of showing prejudice. *State v. Nave*, 694 S.W.2d 729, 735 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986). Inadequate preparation is not grounds for granting a continuance where counsel has had ample opportunity to prepare. *State v. Crahan*, 747 S.W.2d 721, 722 (Mo.App. 1988).

The case before us is marked by numerous continuances. Appellant succeeded in moving the trial from June to

August. Then as that date approached he requested sixty more days to prepare. Though given seventy-eight more days as a result of the State's continuance, appellant's counsel still offered the same reasons as grounds for additional time in October, when the trial commenced. Under these circumstances we cannot say that the trial court abused its discretion in denying appellant's motions. Appellant has not shown prejudice in the denial of his motions. The point is denied.

### D.

Appellant next contends that because the victim's videotaped statements were not corroborated, there was insufficient evidence on which to found his conviction. On appeal this Court does not weigh the evidence. In reviewing the sufficiency of the evidence:

> we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. The question is whether the evidence, viewed in a light most favorable to the State, is sufficient to support the verdict.

*State v. Brown*, 660 S.W.2d 694, 699 (Mo. banc 1983). Appellant admits that a victim's uncorroborated testimony is generally sufficient, but cites *State v. Baldwin*, 571 S.W.2d 236, 239 (Mo. banc 1978), for the proposition that where the victim's testimony shows contradictions—either with her own testimony or the admitted facts—it "must be corroborated or the judgment cannot be sustained."

Appellant argues that the videotaped statement must be corroborated because the tape was not substantial, convincing evidence because (1) her statement was not sworn; (2) she had a speech impediment and needed Dr. Snider's interpretation to be understood; (3) the tape was blurry; (4) the tape was the product of leading questions; and (5) the jury viewed the tape only once. While appellant insists that the videotaped statement leaves the mind "clouded with doubt," his proof of that assertion is, itself, highly nebulous. Indeed, he fails to identify either any internal inconsistency in her statement or an external inconsistency in relation to other evidence in the case.

Even assuming that corroboration is necessary, which it is not on this record, corroborative evidence is plentiful. L__'s physical examination showed she had been penetrated. Other testimony described appellant's possessive behavior toward the victim, his nude photographs of her and his wrapping his nude body around her on a campout. Moreover, L__ came home with blood on her underwear after a night at appellant's home. This evidence is sufficient to support the jury's verdict. The point is denied.

### III.

### Rule 29.15 Appeal

Appellant's final point in this consolidated appeal is that the motion court erred in denying his Rule 29.15 motion. That motion asserts that he was denied the effective assistance of counsel in that his trial counsel failed to investigate, interview witnesses and prepare and present a defense.

In a Rule 29.15 hearing, "the movant has the burden of proving his grounds for relief by a preponderance of the evidence." Rule 29.15(h). Appellate review of the court's denial of appellant's Rule 29.15 motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(j). This court reverses only if a full review of the record leaves a definite and firm impression that a mistake has been made. *State v. Feltrop*, 803 S.W.2d 1, 20 (Mo. banc 1991).

In arguing the ineffectiveness of his trial counsel, appellant must show [1] that counsel's performance was deficient and [2] that his defense was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. To meet the prejudice prong of the test, appellant must

prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. This Court need not resolve the performance question before testing the prejudice aspect of the *Strickland* test. "If it is easier to dispose of the claim on the ground of lack of sufficient prejudice, the reviewing court is free to do so." *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

In its findings of fact, the motion court found that prior to appellant's trial "the Public Defender's office was under a heavy case load." The court found, however, that the Public Defender's office had conducted an extensive investigation. Timothy Wynes testified that he had done "considerable personal investigation" and his office had tried to talk with everyone involved with the case. Upon his departure in August, 1987, Wynes turned over a digest of the case to R.J. Gordon and talked with Gordon several times about it. Gordon took the depositions of four persons in August. Gordon participated fully at trial, making opening and closing statements and cross-examining two of the state's three witnesses. Gordon called no witnesses for the defense.

Appellant relies heavily on *State v. Harvey*, 692 S.W.2d 290 (Mo. banc 1985), in which defense counsel attended but refused to participate in the defendant's capital murder trial. This Court held that such nonparticipation was per se ineffective assistance of counsel. The existence of prejudice could be assumed where "after voir dire defense counsel effectively boycotted the proceedings." *Id.* at 292. The situation in the case before us bears no resemblance to a *Harvey* boycott. We therefore look to the allegations of prejudice made by the appellant.

In addition to finding that the Public Defender's office had extensively investigated the case, the motion court found that while more than two years had passed since the guilty verdict, appellant still had not produced or presented any evidence that could reasonably be expected to produce a different outcome. "The Movant has not shown," wrote the court, "that he has suffered any prejudice for the failure of his counsel."

Appellant argues he was prejudiced by his defense counsel's failure to call two witnesses, Kevin Klein and Bonnie Brennfoerder, and by counsel's failure to present evidence that L— had previously been sexually abused. At the motion hearing both Klein and Brennfoerder testified to appellant's character and to their observations to the effect that L— behaved affectionately toward appellant for a period of time after the alleged rape. Klein, who was a pastor at appellant's church, testified that appellant had been an active church member. Brennfoerder, whose family had temporarily boarded appellant, testified that she had never considered appellant a threat to her four year old granddaughter.

██ The Klein and Brennfoerder testimony points primarily to appellant's character, not directly to the issue of whether Schaal committed the specific acts charged. To place appellant's character in issue would have opened the door to introduction of appellant's earlier guilty plea for attempted rape. *State v. Reilly*, 674 S.W.2d 530 (Mo. banc 1984). There was, therefore, a compelling strategic reason for not presenting the Klein and Brennfoerder testimony. In the face of a compelling strategic rationale for a course of action, we presume that defense counsel's actions fall within the scope of sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

Finally, appellant alleges that information arose immediately before the trial suggesting that the victim had once been seen performing oral sex on her older brother prior to the date of her rape by appellant. The Public Defender's investigator testified that he had spoken to a person who had heard this information from the mother but that person felt he was in a privileged relationship with the mother. Appellant asserts that had there been more time before trial he could have developed this lead further, specifically by obtaining records relating to the brother's behavioral problems. Appellant does not explain why, in

the two years since the trial, he has not obtained any "evidence" supporting this bare allegation. Nothing appears beyond secondhand hearsay by a confidential informant. No evidence to support the allegation was introduced at the motion hearing. We are left with no more than appellant's hopeful speculation; it does not bear any indicia of prejudice.

■■■ Further, even if the allegation had been borne out, it would not be admissible.

Evidence that another person had an opportunity or motive for committing the crime for which the defendant is being tried is not admissible without proof that such other person committed some act directly connecting him with the crime.

*State v. Easley*, 662 S.W.2d 248, 251–52 (Mo. banc 1983) (quoting *State v. Umfrees*, 433 S.W.2d 284, 287 (Mo. banc 1968)). Evidence which has no other effect than to cast bare suspicion on another is not admissible. *State v. LaRette*, 648 S.W.2d 96, 103 (Mo. banc), cert. denied, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). Since this evidence, even if developed, would have been inadmissible, defense counsel's failure caused no prejudice to the defendant.

Appellant has failed to sustain his burden of proving grounds for relief by a preponderance of the evidence in the motion court. After reviewing the full record, this Court does not agree that the findings and conclusions of the Rule 29.15 motion court are clearly erroneous.

### IV.

The judgments of the trial court and the post-conviction hearing court are affirmed.

RENDLEN, HIGGINS, COVINGTON, HOLSTEIN, JJ., and FENNER, Special Judge, concur.

BLACKMAR, C.J., concurs in separate opinion filed.

BILLINGS, J., not sitting.

BLACKMAR, Chief Justice, concurring.

I concur, but not without reservations. The case is closer to *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), than to *Craig v. Maryland*, —— U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Yet those two cases might not be wholly harmonious. Justice Scalia, who wrote for the Court in *Coy*, dissented in *Craig*. Justice O'Connor, who wrote for the Court in *Craig*, indicated her concerns in a separate opinion in *Coy*.

In the normal course of a criminal trial witnesses give their evidence from the stand in the presence of judge, defendant and jury, in response to questions which do not suggest the answer. Recent cases sanction departure from this strict procedure, but only for a reason. In *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the prosecution was allowed to introduce a witness's out-of-court statement when he claimed that he was "on drugs" and had no present memory of the material events. In *State v. Bowman*, 741 S.W.2d 10 (Mo. banc 1987), the witness did not profess lack of memory, but his testimony was inconsistent with his prior statement, and the statement was received as substantive evidence. Just as in *Green*, the jury was allowed to weigh the witness's recorded statements against his present testimony. Defense counsel had the right of cross-examination, although it must be difficult to cross-examine a witness who says repeatedly, "I don't remember."

In *Craig* there was an express finding, pursuant to statute, that the child witness would be traumatized by being required to testify. The Court then reviewed classic hearsay doctrine, and found that the child's statements could be introduced under a statutory exception to the hearsay rule. The Court pointed to the requirement of express findings of unavailability. It is implicit in the trial court's findings that the witness could not be cross examined, for cross-examination would presumably be as traumatic as direct examination.

The Court construes our statute as giving the prosecution an election as between the child witness's recorded statement and her trial testimony. There is nothing in the statute to limit or to guide the prosecutor's election. (Under *State v. Seever*, 733

S.W.2d 438 (Mo. banc 1987), the prosecutor could not bolster trial testimony by a congruent extrajudicial statement.) I cannot agree that the procedure here sanctioned is so satisfactory as the traditional method of direct and cross examination. Cross-examination, in particular, would be a risky venture when the witness has not spoken a single word in court. The most predictable outcome would be a flood of tears which would be fatal to the defendant's case.

But statutes are presumed constitutional, and I believe that *Craig* has so qualified *Coy* that I cannot say that the present statute is fatally tainted. Perhaps a definitive answer will be available from upstairs.

In all other respects I concur in the principal opinion.