**STATE of Missouri, Respondent,**

v.

**Donald C. BROWN, Appellant.**

**No. 64791.**

Supreme Court of Missouri,
En Banc.

Nov. 22, 1983.

Rehearing Denied Dec. 20, 1983.

**696**

Sean D. O'Brien, Asst. Public Defender, James W. Fletcher, Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for respondent.

BILLINGS, Judge.

Defendant Donald C. Brown was convicted by a jury of abuse of a child in violation of § 568.060, RSMo 1978.[1] Defendant contends the statute is so vague and indefinite as to violate the Due Process Clause of the United States Constitution and the Missouri Constitution, Article II, § 1 and Article III, § 1. He also claims the trial court was without jurisdiction because the indictment did not state sufficient facts to constitute a crime; the evidence was insufficient to support his conviction; the trial court erroneously denied his challenge for cause to one venireperson; and, certain evidence was admitted in violation of the best evidence rule. We affirm.

Defendant and Sandra Brown are the parents of Tekila M. Brown, born on June 28, 1981. Tekila was three months premature at birth. She weighed between one and two pounds and was kept in the hospital for two months before being released to her parents in August, 1981. The events giving rise to the alleged act of abuse occurred during January, 1982, a time at which Tekila was less than seven months old and weighed between ten and thirteen pounds.

Tekila was in the custody of both parents until January 8, 1982, when the couple separated. Sometime during the first week in January, defendant became angered and frustrated at Tekila's crying, picked up the child by her ankles, swung her around, and tossed her four feet to a couch across the room. Because of this, Sandra left defendant.

Tekila was in Sandra's care from the date of separation until January 22, 1982, when Sandra let defendant have the child. At this time there were no unusual marks on the baby's body that would indicate any apparent injury to the child. On Saturday, January 23, 1982, defendant called his wife on the telephone. An argument developed and defendant threatened to hurt Tekila and asked his wife if she wanted to read about her in the newspaper.

Just after midnight on January 26, defendant called an ambulance and his daughter was rushed to Children's Mercy Hospital in Kansas City. Upon arrival, Tekila was lethargic and had bruises to the right side of her face, parallel bruising marks on the right side of her neck, a smaller bruise on the left side of her neck, bruising on her left forearm, and hemorrhaging of her right eye. Defendant told the doctors that his daughter's injuries resulted from her falling out of bed. Medical examination revealed that the bruises on Tekila's neck were consistent with an assumption that a great deal of force was applied to the child in a manner similar to choking or strangulation and were not the result of normal holding.

X-rays taken on January 26, 1982, revealed six bone fractures. There were five "avulsion" fractures to the left hand and wrist, right wrist and forearm, right thigh bone and left leg. The sixth fracture was an "impacted" fracture to the third finger of the right hand. This last injury was consistent with falling out of bed but the other five fractures found were not consistent with the alleged fall from a bed but were caused by twisting, sheering or pulling injuries. From the healing pattern re-

1. The trial court imposed a one thousand dollar fine, the payment of which was suspended and defendant was placed on probation for two years. As a special condition of his probation, appellant was ordered to attend psychological counseling as recommended by his probation officer.

vealed by the x-rays, it could be determined that the five avulsion fractures caused by a pulling or twisting force most likely occurred sometime between December 29, 1981 and January 12, 1982. Tekila's condition was diagnosed as the "battered child syndrome" or "child abuse syndrome".

On January 26, defendant and his wife met with a state social worker. Defendant reasserted his claim that Tekila had fallen out of bed and hit her head on a wooden slat used to keep the mattress on an oversized bed frame. The same day defendant was interviewed by detectives from the Kansas City Police Department Juvenile Division. Defendant repeated his story of how Tekila's head injuries and bruises on her jaw and neck were caused by a fall from her bed. On January 27, defendant again met with the social worker and at his home he demonstrated how he believed his daughter crawled over him in their bed and fell on the wood slat. Evidence at trial contradicted defendant's contention that Tekila was able to crawl.

On February 1, 1982, defendant went to the police department and gave a revised statement. At this time he admitted he caused the bruises to Tekila's neck. Defendant stated that on Sunday evening, January 25, Tekila was crying and would not stop despite the fact that she had been fed and changed. Frustrated and upset, defendant grabbed the baby by the neck with his hand, shook her sideways and told her to "hush up". Defendant repeated this confession to the social worker on February 2, 1982.

■ Defendant contends that § 568.060.-1(a), RSMo 1978, which provides a person is guilty of Abuse of a Child if he "knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old," is unconstitutionally vague under the 14th Amendment to the United States Constitution (Due Process Clause). Vagueness, as a due process violation, offends two important values. One is that notice and fair warning require that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). *See Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973); *State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 233 (Mo. banc 1982). Additionally, the vagueness doctrine assures that guidance, through explicit standards, will be afforded to those who must apply the statute, avoiding possible arbitrary and discriminatory application. *Grayned v. City of Rockford,* 408 U.S. at 108, 92 S.Ct. at 2299; *State ex rel. Williams v. Marsh,* 626 S.W.2d at 233.

■ A statute is presumed constitutional and will not be held otherwise unless it clearly and undoubtedly violates some constitutional provision. *In re. Trapp,* 593 S.W.2d 193, 202 (Mo. banc 1980) (cases cited therein), *appeal dismissed,* 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982). Impossible standards of specificity are not required. *Id.*

■ It is not the issue that the legislative branch of government which enacted the statute could have chosen more precise or clearer language which determines the issue of vagueness. *State v. McMilian,* 649 S.W.2d 467, 471 (Mo.App.1983), *citing, United States v. Powell,* 423 U.S. 87, 94, 96 S.Ct. 316, 320, 46 L.Ed.2d 228 (1975). We have previously recognized that the many diverse circumstances which may give rise to a finding of child abuse or neglect must be considered when the standards embodied in a statute are viewed in the light of the due process clause. *In re. Trapp,* 593 S.W.2d at 203.

"If the terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirements as to definiteness and certainty." *Prokopf v. Whaley,* 592 S.W.2d 819, 824 (Mo. banc 1980).

■ The statute, § 568.060.1(a), conveys with sufficient definiteness what conduct is

prohibited by law. The words "cruel and inhuman punishment" in the statute are not so vague and indefinite as to render the statute void for vagueness. These terms have a settled common-law meaning and are words of general and common usage about which there is no great dispute as to meaning. Our conclusion is consistent with decisions in other jurisdictions where similarly worded child abuse statutes have survived void for vagueness attacks. *See, e.g., State v. Fahy,* 201 Kan. 366, 440 P.2d 566, 569 (1968) ("[s]uch words as torture, beat, abuse, *cruel punishment or inhuman punishment are hardly vague.*") (Emphasis added); *Bowers v. State,* 283 Md. 115, 389 A.2d 341, 348 (1978) (the standard "cruel or inhumane" has a settled and commonly understood meaning); *Hunter v. State,* 172 Ind. App. 397, 360 N.E.2d 588, 594–95 ("unnecessary" punishment or infliction of pain) *cert. denied,* 434 U.S. 906, 98 S.Ct. 306, 54 L.Ed.2d 193 (1977); *State v. Samter,* 4 Or. App. 349, 479 P.2d 237, 240 (1971) ("cruel mistreatment"); *State v. Killory,* 73 Wis.2d 400, 243 N.W.2d 475, 479–80 (1976) ("cruel maltreatment").

Defendant attacks the statute, § 568.060, as an impermissible delegation of legislative power in violation of Mo. Const. Art. II, § 1, and Art. III, § 1. We recognize that the duty and power to define crimes and ordain punishment is exclusively vested in the legislature. *State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 235 (Mo. banc 1982), *citing, State v. Raccagno,* 530 S.W.2d 699, 703 (Mo.1975). While not all persons would agree in every instance whether certain specified conduct was sufficiently beyond normal to constitute cruel and inhuman treatment, the statute clearly defines the yardstick to be applied. *See, State v. Samter,* 479 P.2d at 239. The mere fact that applying the statute may require some discretion on the part of the trier of fact does not render the discretion exercised analogous to defining a crime. *State ex rel. Williams v. Marsh,* 626 S.W.2d at 235. We

find that the crime of abuse of a child in § 568.060.1(a) sufficiently definite to withstand defendant's challenge.

We also reject defendant's claim that the trial court was without jurisdiction because the indictment did not state sufficient facts to constitute a crime. Defendant's indictment tracked the language of § 568.060, RSMo 1978, and charged that "on or about January 26, 1982, 0020 hours in the County of Jackson, State of Missouri, the defendant Donald C. Brown, Jr., knowingly inflicted cruel and inhuman punishment upon Tekila M. Brown, a child less than 17 years old, by grabbing her by the throat and shaking her and bruising her throat, back and neck." [2]

The test of sufficiency of an indictment is whether it contains all essential elements of the offense as set out in the statute and clearly apprises defendant of facts constituting the offense. *State v. Garrett,* 627 S.W.2d 635, 637 (Mo. banc 1982) (quoting *State v. Strickland,* 609 S.W.2d 392, 395 (Mo. banc 1980)). See, Mo. Rule 23.01(b). Defendant complains that the terms "cruel and inhuman punishment" are not sufficiently definite to inform him of what facts constitute the basis of the charge. As we have previously noted, this attack upon the statute is without merit. Upon reviewing the indictment and trial record, we conclude that the indictment included sufficient facts to enable defendant to defend the case and to bar further prosecution. The language of the indictment did not prejudice defendant's substantial rights and the trial court had jurisdiction to proceed.

Defendant next asserts that the evidence was insufficient to support a guilty verdict. It is not the role of a reviewing court to weigh the evidence, but rather, it is the function of the jury to determine beyond a reasonable doubt whether defendant was guilty of the offense charged. *State v. Downs,* 593 S.W.2d 535, 542 (Mo.1980); *State v. Eaton,* 504 S.W.2d 12, 16 (Mo.1973). In assessing the

**2.** Prior to trial the State amended the indictment to charge the alleged act occurred just

before midnight on January 25, 1982.

sufficiency of the evidence, we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. The question is whether the evidence, viewed in a light most favorable to the State, is sufficient to support the verdict. *State v. Story,* 646 S.W.2d 68, 72 (Mo. banc 1983) (cases cited therein). We find that there is ample evidence to support defendant's conviction.

 We have previously summarized the evidence at trial and need not repeat it here. Defendant's own admissions, together with the persuasive body of circumstantial evidence produced at trial, provide overwhelming support for the jury's verdict. We note that "the state is not required to conclusively establish guilt nor exclude every hypothesis of innocence, even in a circumstantial evidence case, *State v. Prier,* 634 S.W.2d 197, 199 (Mo. banc 1982)." *State v. Overkamp,* 646 S.W.2d 733, 737 (Mo.1983).

Defendant particularly complains that the evidence was insufficient to establish the required mental state for § 568.060, that defendant *knowingly* inflicted cruel and inhuman punishment. This point is without merit. Direct proof of the required mental state is seldom available and such intent is usually inferred from circumstantial evidence. *State v. Turner,* 623 S.W.2d 4, 7 (Mo. banc 1981). In the instant case, defendant's wife testified as to threats made toward the victim by defendant less than three days before the alleged act of abuse. Defendant admitted committing the act in question. We conclude there was sufficient evidence for the jury to find that defendant acted knowingly.

Defendant complains that on voir dire examination the court failed to sustain his challenge to venireperson Daniels because she had a grandmother who was a victim of a beating death. Upon reviewing the record we conclude that the trial court did not abuse its wide discretion in determining the qualifications, abilities and impartiality of venireperson Daniels. *See,*

*State v. Smith,* 649 S.W.2d 417, 422 (Mo. banc 1983); *State v. Olinghouse,* 605 S.W.2d 58, 69–70 (Mo. banc 1980).

Defendant's final point argues that the trial court improperly admitted a photocopy of a written statement by defendant in violation of the best evidence rule. The statement in question concerned defendant's original claim that Tekila's bruising injuries on her neck resulted from her falling out of bed. This evidence was also testified to by another witness and the defendant himself at trial. For the reason that the facts contained in the statement existed independently of State's Exhibit 43, the best evidence rule was not applied. *State v. Curry,* 473 S.W.2d 747, 748 (Mo. 1971); *State v. Downing,* 630 S.W.2d 128, 130 (Mo.App.1981).

All concur.