**STATE of Missouri, Plaintiff–Respondent**

**v.**

**Danny Lee MORRIS, Defendant–Appellant.**

**Danny Lee MORRIS, Plaintiff–Appellant**

**v.**

**STATE of Missouri, Defendant–Respondent.**

Nos. 17365, 17949.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 8, 1992.

Motion for Rehearing or Transfer to
Supreme Court Denied
Dec. 22, 1992.

Application to Transfer Denied
Jan. 26, 1993.

Ellen H. Flottman, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert Alan Kelly, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Chief Judge.

A jury found Danny Morris (defendant) guilty of murder in the first degree. § 565.020.[1] He was sentenced to imprisonment for life without eligibility for probation or parole. He thereafter filed a Rule 29.15 motion for post-conviction relief. That motion was denied following an evidentiary hearing. Defendant appeals from the judgment of conviction and from the order denying his Rule 29.15 motion. Those appeals were consolidated in accordance with Rule 29.15(*l*). This court affirms.

During the early hours of April 26, 1990, defendant was at a location in New Madrid, Missouri, near Russell Street. Other people were nearby. Some had firearms. Defendant had a sawed-off shotgun.

Derrick Taylor was across the street from defendant. Taylor had a pistol. He fired it, "[h]e shot up in the air." Defendant "pulled up his gun." He pointed it but did not fire it.

Phinezy Johnson was down the street from where Taylor and defendant were when Taylor fired his weapon. Johnson walked north toward Taylor and defendant. Johnson had a rifle. He stood in front of Hazel's Place, a tavern that had closed a short time earlier. He said, "I'll show you how to make all y'all m____-f____ scatter." He began firing his rifle, backing away from the street. He continued firing the rifle "until it was empty."

When Johnson began firing his rifle, the people along Russell Street began running. Alvin Jackson had been talking with some girls. Jackson ran to the west between Hazel's Place and a house trailer.

Sandra Triblett was standing in front of Hazel's Place when the shooting began. She saw Johnson back alongside Hazel's Place while he continued to fire his rifle. She "couldn't move 'cause he was shootin' out toward the street." After the shooting stopped, she ran down the street and bent down behind a car. She "raised back up" and saw Dorothy Jackson, Johnson's girlfriend. Dorothy Jackson was looking toward the direction where Johnson was standing. Ms. Triblett testified that she also saw Alvin Jackson and defendant. They were behind Hazel's Place. She testified that defendant aimed his gun and fired at Alvin Jackson; that Alvin Jackson fell.

Dorothy Jackson (no relation to Alvin Jackson) testified that she met Phinezy Johnson and defendant after the shooting stopped; that defendant said "that he had shot Alvin Jackson in the head." Phinezy

1. References to statutes are to RSMo 1986.

Johnson and Dorothy Jackson went to her residence. Defendant did not accompany them at that time, but came there later.

Defendant testified. He denied shooting Alvin Jackson. He said that he found a sawed-off shotgun the morning of the shooting; that the shotgun was laying on the ground alongside Hazel's Place. He testified that he did not fire the shotgun; that he later dropped it alongside Hazel's Place. He denied that he told Dorothy Jackson that he shot Alvin Jackson.

Defendant's first point on appeal asserts that there was insufficient evidence to sustain his conviction for murder in the first degree. Particularly, defendant claims that the state "failed to prove that [defendant] caused the death of Alvin Jackson after deliberation."

In reviewing defendant's conviction, this court considers the evidence in the light most favorable to the verdict rendered by the jury. *State v. Ternetz,* 740 S.W.2d 713, 714 (Mo.App.1987).

All evidence and inferences that tend to support the verdict are accepted as true. *State v. Brown,* 660 S.W.2d 694, 698–99 (Mo. banc 1983). Evidence and inferences to the contrary are disregarded. *Id.* "The question is whether the evidence, viewed in a light most favorable to the State, is sufficient to support the verdict." *Id.* at 699, *citing State v. Story,* 646 S.W.2d 68, 72 (Mo. banc 1983).

*State v. Norris,* 813 S.W.2d 379, 380 (Mo. App.1991).

Defendant accurately states the elements of first degree murder to be "(1) knowingly (2) causing the death of another person (3) after deliberation." *See* § 565.020.1. He contends that the state failed to present evidence "from which a rational trier of fact could find deliberation, even in the light most favorable to the verdict."

Defendant has pointed out that "[e]vidence must be presented that would support a jury finding that a defendant acted deliberately," citing *State v. Clemmons,* 753 S.W.2d 901, 904 (Mo. banc), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). It is not necessary, however, for the state to present direct evidence of deliberation. *State v. Eggers,* 675 S.W.2d 923, 927 (Mo.App.1984). "[T]he mental elements establishing murder may be proved by indirect evidence and inferences reasonably drawn from the circumstances surrounding the slaying." *Id.* at 927–28.

"Deliberation" in a case of capital murder, means that the defendant considered the taking of another's life while in a cool and deliberate state of mind. It is not necessary, however, that the actor brood over his actions for an appreciable period of time. *State v. Armbruster,* 641 S.W.2d 763, 765[2] (Mo.1982).

*Id.* at 927.

Sandra Triblett testified that she saw defendant shoot Alvin Jackson. She testified that defendant aimed the gun; that he then fired the shot; that Alvin Jackson fell. She said that defendant then ran; that "he left." Alvin Jackson was shot in the back of the head.

After defendant shot Alvin Jackson, he was with Phinezy Johnson. The two of them met Dorothy Jackson. Defendant did not have a gun with him at that time. He said only "that he had shot Alvin Jackson in the head."

There had been several shots fired during the early morning of April 26, 1990. According to the testimony of Sandra Triblett, the shot that defendant fired that killed Alvin Jackson was fired after the other shooting had stopped. It was the last shot that was fired. The evidence was that defendant aimed the gun and fired. The shot was not fired inadvertently.

There was no evidence that Alvin Jackson had displayed any aggression. He was not one of the persons who had been discharging firearms prior to the time he was killed. There was no struggle. After defendant shot Alvin Jackson, he left without checking on Jackson's condition or seeking assistance for him.

Shortly after Alvin Jackson had been shot, defendant acknowledged not only that he had shot Jackson but that he had shot him in the head. After the shoot-

ing, he discarded the weapon. He later went to Dorothy Jackson's house and then, along with Dorothy Jackson and Phinezy Johnson, to a trailer where other persons were present. "He ... told everybody to be cool."

Taken as a whole, the evidence provided a basis for the jury to reasonably infer that defendant, in a cool and deliberate state of mind, shot and killed Alvin Jackson. Defendant's first point is denied.

■ For his second point on appeal, defendant contends that the trial court erred in instructing the jury that proof beyond a reasonable doubt is "proof that leaves you firmly convinced of the defendant's guilt." Defendant contends, relying on *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), that to define reasonable doubt in this manner was improper because "the statute does not require it."

The definition of reasonable doubt about which defendant complains was contained in Instruction No. 4. Instruction No. 4 was patterned after MAI–CR 3d 302.04. The Supreme Court of Missouri has refuted the argument that defendant now makes. As this court previously explained:

> A challenge to the MAI–CR3d 302.04 definition of *reasonable doubt* was raised and denied by the Missouri Supreme Court in *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), and more recently in *State v. Griffin,* 818 S.W.2d 278 (Mo. banc 1991). The defendant's point is governed by *Griffin* and *Antwine,* not by *Cage. State v. Edmonson,* 827 S.W.2d 243, 249 (Mo.App.1992); *State v. Vanzant,* 814 S.W.2d 705, 708 (Mo.App. 1991).

*State v. Bogard,* 836 S.W.2d 87, 89 (Mo. App.1992). Defendant's second point is denied.

Defendant's third and fourth points are directed to his Rule 29.15 motion. By his third point, defendant contends that the motion court erred in holding against the claim that he was denied effective assistance of counsel at his criminal trial. By his fourth point, he asserts that the motion

court erred in denying his Rule 29.15 motion because "newly discovered evidence impacting upon the question of [defendant's] actual innocence presented at the evidentiary hearing ... mandated vacating [defendant's] conviction and remanding for a new trial or a further new trial motion and hearing."

"Appellate review of a Rule 29.15 motion is 'limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous.' Rule 29.-15(j)." *State v. Williamson,* 836 S.W.2d 70, 73 (Mo.App.1992).

Defendant claims that he did not receive effective assistance of counsel in two respects. He contends that his trial attorney "failed to investigate or call Renee Davis as a witness at [his] trial"; that "[h]ad trial counsel sufficiently investigated ..., he would have discovered Renee Davis" who "would have refuted the testimony of Sandra Triblett, who was the State's only eyewitness at [his] trial." Defendant also contends that his trial counsel was ineffective in "fail[ing] to call a ballistics expert as a witness."

Defendant's amended Rule 29.15 motion alleged, in its paragraph 8(c):

> [Defendant] was denied the effective assistance of counsel.... Counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances and [defendant] was prejudiced thereby. Specifically, trial counsel was ineffective for the following reasons:
>
> (1) Trial counsel failed to investigate and call as witnesses at [defendant's] trial: ... Renee Davis [and 26 other persons].... Had they been called at trial, these witnesses would have testified, in support of [defendant's] version of the fight, that [defendant] did not fire the shot which killed Alvin Jackson, and there is a reasonable probability that the jury would have acquitted [defendant].

Renee Davis would have testified that the state's only eyewitness, Sandra Triblett, had told Renee after the shooting that she saw [defendant's] codefendant,

Phinezy Johnson, shoot Alvin Jackson. Had Renee Davis been called to testify by defense counsel, her testimony would have impeached the state's main witness with a prior inconsistent statement. Neither defense counsel nor his investigator ever talked to Renee Davis.

The motion court entered the following finding:

Point 2(c)(1) of [defendant's] first amended motion is denied. [Defendant's] uncooperativeness with trial counsel and his assaultive conduct just prior to trial, both established by the record, adumbrate the allegations of his postconviction motion of ineffective assistance. [Defendant's] testimony and witnesses presented at the evidentiary hearing failed to establish that counsel was ineffective;

Defendant's trial counsel[2] testified at the evidentiary hearing on the Rule 29.15 motion regarding his relationship with defendant and defendant's cooperativeness prior to trial and at trial. The trial counsel's testimony included the answers to the following questions:

Q. Would you describe Danny Morris as being a cooperative client, noncooperative, or—in getting ready for trial?

A. In getting ready for trial, I wouldn't say that Danny was very noncooperative. Noncommunicative at times in the sense of—I think Mister Johnson could give better information of trying to get information concerning the investigation to do things. But I don't think prior to trial he was noncooperative. He was very strong—this is not a criticism—very opinionated and we did have some disagreements during the course of our representation concerning how the trial should proceed, or whether or not he should enter pleas or not enter pleas. I advised him of my opinion concerning the strength of the state's case.

. . . . .

Q. Now, this matter proceeded to trial on the 6th day of December, 1990, is that correct?

A. Yes.

Q. And after the jury had been—in fact, I believe before *voir dire* had been completed—or begun that morning, did Danny Morris strike you here in the courtroom?

A. I think your timing is wrong. We had appeared in front of Judge Cope—

THE COURT: Copeland.

A. Judge Copeland, excuse me—get me in the right county here—that morning and we had asked for a change—a continuance, excuse me—

Q. Yes.

A. —and Danny was not happy whatsoever that we did not get a continuance. We had pointed out some problems in the state's case that we—I'm looking at some notes now is the reason I can be more specific—that we didn't get an autopsy report and we didn't get some statements on some people that I have written down that he complained about and the court denied my request for a continuance concerning the autopsy report and other matters. I was sitting at the end of counsel table writing out notes and Mister Morris—I did not see him strike me, but he—I think he—basically he's a big man, took his palm and hit me on the right side of the head, knocking the chair over with me in it.

Q. Now, after regaining your composure, Mister Morris I believe was shackled and the matter proceeded to begin the trial phase, is that correct?

A. There was a big—I was sitting here somewhat dazed. I recall there was a big struggle and he was handcuffed and shackled, and that was done over my objection, which I believe I made on the record that, "Judge, he should not be handcuffed and shackled."

Defendant's trial attorney also testified about discussions he had with defendant during the course of the jury trial, as follows:

---

**2.** A different attorney represented defendant in his criminal trial than represented him at the evidentiary hearing on his Rule 29.15 motion and now represents him in this appeal.

Q. Now, did he provide—did he provide you with any information during the trial concerning witnesses that you recall?

A. We talked back and forth during the trial as to the whole—every aspect of the trial—what questions he had and what information I needed. Concerning witnesses, I can't answer that.

Q. Now, did you do the things that he asked you to do?

A. I guess since we're here today, obviously not, but I thought I did the best I could for him.

Q. Do you recall anything that he asked you to do specifically other than get him a not guilty verdict?

A. He wanted a continuance on his trial. He complained about some autopsy reports which I didn't have. We had some disagreements concerning the extent of the negotiated plea that I was not able to get from you. There may be some more, but there are several things that he wasn't happy with.

Renee Davis testified. Her testimony included:

Q. Do you remember the shooting at Hazel's place the night Alvin Jackson was killed?

A. Yes.

Q. Did you talk to Sandra [Triblett] the next morning?

A. Yes.

Q. What did she tell you?

A. She told me that B.B. [Phinezy Johnson] had shot that man.

Q. Did she tell you she saw that?

A. Yes.

And, on cross-examination:

Q. Were you at Danny's trial?

A. Yes.

Q. And you heard Miss Triblett testify?

A. Yes.

Q. And after you heard her testify, during the next break did you go tell [defendant's attorney] what you heard her say?

A. No.

. . . . .

THE COURT: I see. Now, did you go to the police and tell them that [Sandra Triblett] had said this?

MS. DAVIS: No. When the trial was going on, Danny was right there and I was behind—and I said, "Danny, why don't you tell your lawyer to tell—to put me on the stand so I can tell what [Sandra Triblett] said." And he—I don't know if he tell him or not.

THE COURT: You don't know whether he told [his attorney] at all?

MS. DAVIS: No. But they didn't get nobody to testify on Danny's behalf. They got everybody to testify against him.

THE COURT: Did you ever tell anyone else, other than Danny, that [Sandra Triblett]—

MS. DAVIS: No.

THE COURT: —[ ] had said this?

Sandra Triblett was asked whether she told anyone that a person other than defendant shot Alvin Jackson. She gave the following answers to the questions asked:

Q. Sandra, did you ever tell anybody anything different than what you testified to at trial?

A. No.

Q. Do you remember talking to Renee Davis a couple of days after the shooting?

A. No.

Q. Did you tell Renee that you saw Finnesy [sic], B.B. Johnson, shoot Alvin?

A. No.

 In assessing the performance of counsel for purposes of determining claims of ineffective assistance of counsel, "the focus is on (1) counsel's performance, and, (2) if that performance is deficient, whether prejudice resulted from counsel's breach of duty. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1983); *Sanders v. State,* [738 S.W.2d 856] at 857–58 [ (Mo. banc 1987) ]." *Driscoll v. State,* 767 S.W.2d 5, 7 (Mo. banc 1989).

Counsel's performance is assessed by determining if counsel acted "reasonably within prevailing professional norms under all circumstances." See *Sanders* at 858. "*Reasonably* effective assistance may be defined as 'the skill and diligence

that a *reasonably* competent attorney would exercise under similar circumstances.'" *Sanders* at 858, quoting *Thomas v. Lockhart*, 738 F.2d 304, 307 (8th Cir.1984), quoted in *Kellogg v. Scurr*, 741 F.2d 1099, 1100 (8th Cir.1984). (Emphasis in *Sanders*.)

*Id.*

■ Giving due regard to the motion court's opportunity to assess the credibility of witnesses, the findings of the trial court that defendant's trial counsel was not ineffective for having not identified Renee Davis as a witness in defendant's criminal case are not clearly erroneous. The record does not disclose how further investigation by defendant's trial counsel would have revealed Renee Davis as a witness. The evidence that was before the motion court revealed that Renee Davis suggested to defendant that defendant ask his trial attorney to call her as a witness. There is nothing in the record that indicates that defendant advised his trial attorney that Renee Davis had the information about which she testified at the Rule 29.15 evidentiary hearing or that she was available at trial to testify. Defendant cannot now complain about his trial attorney failing to call a witness who defendant did not tell him about. There was no showing that defendant's trial attorney failed to exercise the skill and diligence required of a reasonably competent attorney under the circumstances.

The remaining basis for defendant's assertion that he did not receive effective assistance of counsel is his complaint that his trial attorney "failed to call a ballistics expert as a witness." Relying upon a ballistics expert's testimony at the Rule 29.15 evidentiary hearing, defendant asserts that the shotgun that fired the fatal shot could not have been more than ten feet from the victim, Alvin Jackson, when that shot was fired. Defendant argues that the location where Sandra Triblett said defendant stood when he fired the fatal shot was erroneous. Defendant bases that assertion upon the fact that the location that was marked on a diagram that was constructed during the course of the defendant's trial appeared to be a greater distance from the victim than the ballistics expert testified was the maximum distance from which the shot could have been fired. The ballistics expert had calculated the distance that the shotgun would have had to have been from the victim in order to inflict a wound that was the size of the one that resulted.

■ The diagram upon which defendant relies is one that was used by various witnesses during the criminal trial to indicate locations about which they testified. They made notations on the diagram in an attempt to better explain their testimony. There was no evidence that the chart was drawn to scale. Further, the theory of the defense at the criminal trial was that defendant did not fire the fatal shot; that he was not near the location of the victim at the time the victim was shot. At the Rule 29.15 hearing, defendant's trial counsel testified that he did not call a ballistics expert because he did not believe it was necessary to do so; he "didn't see where he would help." The motion court concluded:

> The testimony of the expert witness in this case would have been cumulative in that the evidence in trial establishes that the shot was fired at close range and not at the distance testified to by witness Sandra Triblett. Triblett's testimony was effectively impeached in trial by defendant's trial counsel and evidence offered by the State.

As stated in *Driscoll v. State, supra:* Trial strategy is not a basis for attack on the issue of competency of counsel. *Brown v. State*, 495 S.W.2d 690, 694 (Mo.App.1973). As noted in *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citations omitted.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

**556**

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Id.* at 9.

This court does not find the motion court's finding to be clearly erroneous. Defendant's third point is denied.

Defendant's fourth point asserts that the motion court erred by not granting his Rule 29.15 motion because "newly discovered evidence impacting upon the question of [defendant's] actual innocence" was presented. Defendant contends that his conviction should have been vacated and the case remanded for a new trial, or remanded for purposes of permitting "a further new trial motion and hearing thereon."

Defendant acknowledges that *Wilson v. State*, 813 S.W.2d 833, 834–35 (Mo. banc 1991), explicitly determined that newly discovered evidence is not a basis upon which post-conviction relief may be granted. Nevertheless, he urges that result. This court is compelled to follow the pronouncement of the Supreme Court of Missouri. Mo. Const. art. V, § 2. Defendant's fourth point is denied. The judgment of conviction in defendant's criminal case is affirmed. The order denying defendant's Rule 29.15 motion is affirmed.

CROW, P.J., and SHRUM, J., concur.