

# Missouri Court of Appeals

## Southern District

## Division One

STATE OF MISSOURI, )
)
   Plaintiff-Respondent, )
)
 vs. )   No. SD32109
)
PETER D. HANSEN, )   **Filed: April 18, 2014**
)
   Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable J. Dan Conklin, Circuit Judge

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS

Peter D. Hansen ("Appellant") was charged and convicted in a six-count information with the class C felony of knowingly inflicting cruel and inhuman punishment upon his son, who was less than seventeen years old, (1) by restricting him to a cold bathroom without light, which was too small for the son to stretch out in, for hours at a time, and (2) by restricting food. He was acquitted of the class C felony of endangering the welfare of a child in the first degree by knowingly acting in a manner that created a substantial risk to the body of the son by failing to provide adequate

1

nutrition and sustenance to the child.[1]  The court sentenced Appellant to three years imprisonment on each count, to be served concurrently, suspended the execution of the sentence, and ordered one hundred days of shock incarceration.  Appellant brings two claims of error, both claiming that the trial court erred in overruling his motion for judgment of acquittal in that the State's evidence failed to establish beyond a reasonable doubt that Appellant knowingly inflicted cruel and unusual punishment upon his son in either way.  We agree that the trial court erred in not granting the judgment of acquittal with regard to whether the restriction of food was cruel and unusual punishment, but disagree with Appellant's contention that the confinement was not cruel and unusual punishment.

Appellant was raised in the Seventh Day Adventist Church.  Seventh Day Adventists practice a vegetarian lifestyle and encourage two, rather than three, meals per day.  Members are encouraged to eat a wide variety of natural foods, to drink six to eight glasses of water a day, and to exercise.[2]  Appellant had custody of his two children, an eleven-year-old girl and a fourteen-year-old boy.  His family was evicted from their home and lived in church buildings.  They consumed mostly vegetables, grains, legumes, and some fruit, adhering to the regimen of two meals per day, drinking sixty-four ounces of water, and exercising.  The children were home-schooled, but belonged to a church youth organization which took them camping.  They did not have a television but skateboarded and bicycled.  Appellant used two methods of punishment, restriction -- taking away

---

[1] He was also acquitted of cruel and inhuman punishment to his daughter based on restricting food to her and of knowingly creating a substantial risk to the body by failing to provide adequate nutrition and sustenance to her.

[2] There was evidence that Seventh Day Adventists live longer and healthier due to this lifestyle.

sweets, garnishes on their food, such as cheese[3] or jelly, and five or six times denying

dinner -- and isolation -- where the children were isolated from the rest of the family in

the bathroom or another room.

The version of section 568.060 in effect at the time of the acts with which

Appellant was charged provided in part, "A person commits the crime of abuse of a child

if such person:  (1) Knowingly inflicts cruel and inhuman punishment upon a child less

than seventeen years old[.]"  Section 568.060.1, RSMo Cum. Supp. 1997.[4]  Cruel and

inhuman punishment was not defined in the statute.  The current statute provides:

> 2. A person commits the offense of abuse or neglect of a child if such
> person knowingly causes a child who is less than eighteen years of age:
> (1) To suffer physical or mental injury as a result of abuse or neglect; or
> (2) To be placed in a situation in which the child may suffer physical or
> mental injury as the result of abuse or neglect.

Section 568.060.2, RSMo Cum. Supp. 2013.  In *State v. Brown*, 660 S.W.2d 694 (Mo.

banc 1983), our Supreme Court indicated that the phrase "cruel and inhuman

punishment" has "a settled common-law meaning and are words of general and common

usage about which there is no great dispute as to meaning." *Id.* at 698.  The term

"punishment" has been defined as "severe, rough, or disastrous treatment." *State v.*

*Silvey*, 980 S.W.2d 103,108 (Mo. App. S.D. 1998).

Count II of the amended information claimed that Appellant knowingly inflicted

cruel and inhuman punishment upon his son by restricting food from him.  A key element

to the statute's provision is that Appellant had to "knowingly inflict[] cruel and unusual

punishment."  Knowingly is defined as being aware "of the nature of his conduct or that

---

[3] Much was made of the evidence that the family sometimes ate unusual food such as artichokes and Swiss chard.  There was no evidence that eating artichokes or Swiss chard was in some way unhealthy for the family, nor were those particular foods only eaten by the son.

[4] The legislature removed the phrase cruel and inhuman punishment from the statute in 2012.

those circumstances exist" or being "aware that his conduct is practically certain to cause that result." Section 562.016.3(1)-(2), RSMo 2000. The State claims that the evidence demonstrated that Appellant knowingly subjected his fourteen-year-old son to severe punishment by restricting food. As evidence that Appellant knowingly committed cruel and inhuman punishment, the State claims that the family consumed two vegetarian meals per day. The child was not allowed to eat whatever or whenever he wanted and dinner was withheld about five or six times. As further evidence, the State notes that the child was punished for allegedly stealing one dollar by not having ice cream with the family. The State argues that it is "common sense" that the restriction of food was cruel and inhuman.

The State admits that the majority of child abuse cases involve some sort of physical injury; however a physical injury is not required. *See **State v. Hines***, 377 S.W.3d 648, 657 (Mo. App. S.D. 2012) (holding that while the majority of child abuse cases involve physical injury it is not required by the statute and finding sufficient evidence that the defendant inflicted cruel and inhuman punishment on a child where the defendant knowingly choked her with a hose around her neck until her eyes rolled back and she became afraid she was going to die). The State argues that its expert suggested that the child had suffered a substantial risk of harm to his body.

The problem with the State's argument is the acquittal of the child endangerment charge (Count III). That charge mirrored Count II in charging child endangerment in the first degree by knowingly acting in a manner that created a substantial risk to the body of the son by failing to provide adequate nutrition and sustenance to the child. Furthermore, the evidence was that the family diet was consistent with their sincerely held faith and

4

with Appellant's upbringing. The family ate the same food.  It is not within the common knowledge or common-law meaning that being denied dinner or desserts is cruel and inhuman punishment.   The facts in this case do not rise to the level of severe or substantial punishment.  There certainly is a dispute whether food choices qualify as cruel and unusual punishment.  There was evidence that the son was slightly built, but healthy, and that he participated in bike riding and long hikes.  No intelligence testing was done before or after the child came into foster care.  No blood testing or testing regarding hormone levels were done of the son.[5]  This is an unusual and troubling case, but it would be the first time that a conviction was obtained based on the sincere and religiously held diet choice of the parents.  These food choices and the slight deprivation alone cannot stand as the basis for a claim that the son was the victim of severe, cruel, or unusual punishment.  Appellant's first point is granted.

Appellant's second point, however, does not have merit.  Count I of the amended information claimed that Appellant knowingly inflicted cruel and inhuman punishment upon his son by isolating the child to a small bathroom for hours at a time.[6]  The room was described as five-by-four with a toilet and sink.  When authorities arrived to investigate the situation, the temperature in the building was 58 degrees.  Appellant's son was confined to the bathroom wearing only a long-sleeved t-shirt and thin flannel pants.  He did not have a coat.  He had his arms crossed as if he were trying to keep warm.  The evidence was that the child was confined to the bathroom for his meals, for studying, and

---

[5] The State's expert relied upon the son's percentage in the growth charts.  The expert used the logic that the son was underfed because he gained weight after he came into foster care.  It is a faulty premise that being in a higher weight category equates with better health.

[6] The child generally testified about "the bathroom," although he was kept in two bathrooms which were "about the same size."

for sleep about five or six times with only his sleeping bag. At least one of these punishments lasted more than a week. During these periods, Appellant's son was not allowed to have the light on unless he was doing school work. He was only permitted to leave the bathroom for 15 to 30 minutes of exercise per day. One of the officers present when the children were taken into protective custody stated the conditions were "worse than what you would typically find in a prison-type environment[.]" There was no religious basis for this punishment and certainly a reasonable jury could conclude that it was within the common-law meaning of unacceptable punishment by parents.[7] Point II is denied.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with directions to vacate Appellant's conviction and sentence for the Count II charge of abuse of a child, to enter judgment of conviction on the Count I charge of abuse of a child, and to sentence Appellant accordingly.

Nancy Steffen Rahmeyer, P.J. – Opinion Author

William W. Francis, Jr., C.J. – Concurs

Mary W. Sheffield, J. – Concurs

---

[7] As troubling as the term "cruel and inhuman punishment" is, this punishment comports with a review of previous cases that upheld a cruel and inhuman punishment verdict.