

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111336 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 1922-CR00386 |
| | ) | |
| MARTIN REDMOND, | ) | Honorable Christopher E. McGraugh |
| | ) | |
| Appellant. | ) | Filed: March 12, 2024 |

### Introduction

Appellant Martin Redmond ("Appellant") appeals the trial court's judgment, following a jury trial, finding him guilty of the class A felony of murder in the first degree, § 565.020[1] and the unclassified felony of armed criminal action, § 571.015. In his first point on appeal, Appellant argues that the trial court erred in overruling his motions for judgment of acquittal because the evidence was insufficient to establish the deliberation required to find him guilty beyond a reasonable doubt of murder in the first degree. In his second point on appeal, Appellant argues that the trial court clearly erred in denying his motion in limine regarding evidence that implicated him of committing an uncharged crime. In his third point on appeal, Appellant argues that the trial court clearly erred in denying his request for a mistrial. In his fourth point on appeal, Appellant

---

[1] All statutory references are to RSMo 2018 unless otherwise indicated.

argues that the trial court clearly erred in denying his request to submit a voluntary manslaughter instruction to the jury. We affirm the judgment of the trial court.

**Factual and Procedural Background[2]**

Following a mistrial from a hung jury and a subsequent jury trial, Appellant was convicted of one count of first-degree murder and one count of armed criminal action. The trial court sentenced Appellant to concurrent life imprisonment terms as a prior and persistent felony offender. Appellant timely filed his notice of appeal on January 13, 2023.

On July 23, 2018 Appellant's cousin argued with Witness 1 over the telephone in the presence of Victim, who took the phone from Witness 1 and told Appellant's cousin to stop calling. Later, Appellant, Appellant's cousin, and R.W. drove up to Witness 1's house in a black Chevy Impala. Witness 1 and Appellant's cousin spoke outside of the house before Appellant, Appellant's cousin, and R.W. drove away. Within a few minutes, Victim began walking to a nearby corner store with Witness 1 following close behind him. Witness 1 saw a black Chevy Impala drive up to the corner store where a crowd was gathered. Witness 1 watched Appellant and R.W. exit the vehicle and walk through the crowd, bumping into Victim. Witness 1 then saw Appellant shoot Victim five times as Victim was smoking a cigarette with Witness 2. R.W. then approached Victim and took a satchel from Victim's person. Appellant and R.W. fled the scene in the black Chevy Impala, with bystanders shooting in the air or at the fleeing vehicle. The vehicle stopped and Appellant momentarily exited and fired five more shots in the direction of the crowd and Victim before speeding off. A forensic examiner testified that Victim died from his gunshot wounds.

---

[2] This Court recites the evidence in the light most favorable to the verdict, accepting all reasonable inferences therefrom. *State v. Taylor*, 134 S.W.3d 21, 24 (Mo. banc 2004).

Witnesses 1 and 2 recounted the above events to the responding police officers, informing them that Appellant was responsible for the shooting, that he had fled in a black Chevy Impala, and that he lived nearby.

A few hours later, at approximately 7:18 p.m., Appellant's sister reported that her black Chevy Impala had been stolen between 3:30 and 3:35 p.m. earlier that day. Police found the vehicle that evening, parked 200 feet away from Appellant's sister's home.

Appellant was arrested and interviewed by the police. He first denied being at the scene of the crime and denied any knowledge of the shooting, and then stated that he could not remember whether he or R.W. were there, before eventually admitting that he and R.W. were present. Without providing any details, Appellant maintained that his sister had gotten into a fight and that he and R.W. were defending her, but he denied any involvement in the shooting. Appellant told the police that he, R.W., and his sister had left the scene in a black Chevy Impala.

While one of the officers was testifying at trial, Appellant interrupted the proceeding by cursing and yelling in the presence of the jury.

Following Appellant's outburst, the trial court paused the proceedings for a recess; Appellant was placed in a holding cell to "cool off." During the recess, Appellant's attorney requested a mistrial, which the trial court denied. Appellant agreed to go forward without any further disruptions, and the court resumed the trial after the recess without incident. The record does not reflect that Appellant was visibly handcuffed or shackled at any point in the trial.

Appellant did not put on any evidence at trial after the State rested. The court instructed the jury on first-degree murder, second-degree murder, and involuntary manslaughter, denying Appellant's request to instruct the jury on voluntary manslaughter after finding that the evidence was insufficient to support a contention that Victim or someone acting on Victim's behalf had

3

provoked Appellant to give him adequate cause to kill. Appellant raised the four issues alleged herein in his motion for a new trial, which the court denied. This appeal follows.

## Point I

Appellant first argues that the State failed to prove that he acted with deliberation when he killed Victim. Appellate review of claims challenging the sufficiency of the evidence is limited to determining "whether the state has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." *State v. Hosier*, 454 S.W.3d 883, 898 (Mo. banc 2015). We view the evidence in the light most favorable to the verdict, allowing for all favorable inferences and disregarding all contrary evidence and inferences. *Id.* Reasonable inferences may be drawn from direct and circumstantial evidence. *Id.* at 412-13. We will not weigh evidence anew, as "the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Perkins*, 600 S.W.3d 838, 846 (Mo. App. E.D. 2020) (internal citations omitted).

"A person commits the offense of murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter." Section 565.020.1. "Deliberation" is defined as "cool reflection for any length of time no matter how brief." Section 565.002(3); *State v. Drisdel*, 417 S.W.3d 773, 788 (Mo. App. E.D. 2013) (citing *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010)). "[T]he element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." *Perkins*, 600 S.W.3d at 846-47 (quoting *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. banc 2013)). "Direct proof of a required mental state is seldom available, and the mental state may be proved by indirect evidence and inferences reasonably drawn from the circumstances surrounding the slaying." *Id.* (quoting *State v. Johns*, 34 S.W.3d 93, 110 (Mo. banc 2000)).

4

Here, there is sufficient evidence from which a reasonable juror could have found that Appellant deliberated when he killed Victim. First, "[t]he act of aiming and intentionally firing a gun at a victim supports an inference of a 'cool and deliberate state of mind.'" *State v. Mills*, 623 S.W.3d 717, 725 (Mo. App. E.D. 2021), *transfer denied* (June 29, 2021) (citing *State v. Morris*, 844 S.W.2d 549, 551-52 (Mo. App. S.D. 1992)). The record reveals that Appellant walked up to Victim at the corner store, aimed his gun at Victim, and shot Victim in the face and neck. *See State v. Alexander*, 505 S.W.3d 384, 394 (Mo. App. E.D. 2016) (finding intent can be inferred from use of deadly weapon on a vital part of victim's body).

Second, an inference of deliberation "is supported by a lack of concern for and a failure to attempt to aid the victim." *Perkins*, 600 S.W.3d at 847 (citing *Alexander*, 505 S.W.3d at 393); *see also State v. Sokolic*, 660 S.W.3d 54, 59 (Mo. App. E.D. 2023). Here, not only did Appellant not attempt to aid Victim when he immediately fled the scene after shooting Victim, but Appellant also temporarily halted his escape and fired his gun back towards Victim's location.

Point I is denied.

### Point II

Appellant next argues that the trial court erred in admitting evidence that his sister reported her black Chevy Impala stolen shortly after the murder. Specifically, Appellant argues that this admission was in error because it was irrelevant to his guilt in that it (1) suggested to the jury that Appellant was involved in uncharged criminal activity and (2) involved his sister's conduct, not his.

We review claims challenging the admission of evidence for clear abuse of discretion. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). "A trial court has broad discretion to admit or exclude evidence at trial." *Id.* (citing *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005)). "A

5

trial court abuses its discretion when its decision is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Thomas*, 628 S.W.3d 686, 691 (Mo. App. E.D. 2021). "We review the evidentiary ruling of the trial court 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *Id.* (quoting *State v. Prince*, 534 S.W.3d 813, 818 (Mo. banc 2017)). "In a criminal case involving improperly admitted evidence, the test for prejudice is whether the error was outcome-determinative." *Id.* (citing *State v. Yung*, 246 S.W.3d 547, 555 (Mo. App. S.D. 2008)).

"The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes." *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc 1994). Likewise, evidence is only admissible if it is logically and legally relevant. *State v. Barriner*, 111 S.W.3d 396, 400 (Mo. banc 2003).

> Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case.

*Id*. at 400-01. "Evidence is legally relevant if its probative value outweighs its costs—prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or cumulativeness." *Id.* at 401.

On the record of the present case, the trial court did not abuse its discretion in ruling that Appellant's sister's report of her black Chevy Impala as stolen was admissible because such evidence was logically and legally relevant to Appellant's first-degree murder charge. As previously noted, the allegedly stolen black Chevy Impala was found some 200 yards from Appellant's sister's house, covered in branches. Appellant admitted that his sister was present, along with him, R.W., and another female, in the black Chevy Impala that fled the murder scene.

6

Critically, the record reflects that the State did not introduce the evidence of Appellant's sister's stolen vehicle report as evidence of Appellant's uncharged criminal activity, but rather to suggest that Appellant, acting with his sister, had prepared to defend against potential charges by falsely filing a stolen vehicle report. "The State is entitled to introduce evidence of the circumstances surrounding the offense charged to paint a complete picture." *State v. Hill-McAfee*, 522 S.W.3d 343, 348 (Mo. App. E.D. 2017). Relatedly, the fact that Appellant's sister filed the report, rather than Appellant himself, does not render the evidence logically irrelevant so as to foreclose a jury's inference that Appellant and his sister were acting in concert to hide his guilt and deceive authorities. *See State v. Harris*, 535 S.W.3d 769, 778 (Mo. App. E.D. 2017) ("[L]ogical relevance has a very low threshold.") (quoting *State v. Anderson*, 76 S.W.3d 275, 277 (Mo. banc 2002)).

Because the trial court did not clearly abuse its discretion in admitting the evidence of Appellant' sister's stolen vehicle report, no prejudicial error occurred.

Point II is denied.

## Point III

In his third point, Appellant argues that the trial court erred in denying his request for a mistrial following his verbal outburst at trial. Specifically, Appellant alleges that the court's handling of his outburst unfairly prejudiced him by portraying him as "a violent individual incapable of self-control."

Review of a trial court's decision on a defendant's request for a mistrial is for abuse of discretion. *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 49 (Mo. banc 2006); *see also State v. Salmon*, 563 S.W.3d 725, 732 (Mo. App. E.D. 2018). "A mistrial is a drastic remedy, granted only in extraordinary circumstances." *Vincent*, 191 S.W.3d at 49 (quoting *State v. Parker*, 886 S.W.2d

7

908, 922 (Mo. banc 1994)). To hold that a failure to grant a mistrial was reversable error, "we must conclude as a matter of law that the error was so prejudicial that its effect was not removed by action of the trial court." *Parker*, 886 S.W.2d at 922 (citing *State v. Shelton*, 779 S.W.2d 614, 616 (Mo. App. E.D. 1989)). A "[t]rial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.* (citing *State v. Kemp*, 212 S.W.3d 135, 145-46 (Mo. banc 2007)).

"In determining whether to declare a mistrial, the trial court may consider the spontaneity of the outburst, whether the prosecution was at fault, whether something similar, or even worse, could occur on retrial, and the further conduct of the trial." *State v. Brooks*, 960 S.W.2d 479, 491 (Mo. banc 1997). "Although emotional outbursts are to be prevented insofar as possible, the trial court exercises broad discretion in determining the effect of such outbursts on the jury." *State v. Deck*, 994 S.W.2d 527, 539 (Mo. banc 1999).

During the testimony of one of the officers at Appellant's trial, Appellant interrupted the trial and blurted out the following:

> APPELLANT: Hey, man. Fuck this shit, man. You all did some foul ass shit, man. I already went to trial on this, man. You all steady bringing up shit from my past, man.
> THE COURT: [Appellant], please have a seat. Please have a seat.
> APPELLANT: Fuck you all, man.
> THE COURT: Please remove Mr.—
> APPELLANT: This is bullshit.
> THE COURT: Please remove [Appellant] from the courtroom.
> APPELLANT: I'm getting into it with the sheriffs and all type of shit back here. You all don't believe me.
> ATTORNEY FOR APPELLANT: Your Honor, may I ask for a break?
> THE COURT: All right. your lunches are here. I anticipate—we'll take our lunch break right now.

"The trial court was not obligated to reward [a defendant] for his outburst." *State v. Solomon*, 7 S.W.3d 421, 427 (Mo. App. S.D. 1999) (citing *State v. Olinghouse*, 605 S.W.2d 58,

8

70 (Mo. banc 1980)). "An accused cannot claim the benefit of constitutional rights while at the same time engaging in disruptive conduct that makes it exceedingly difficult to carry on at trial." *Id; see also State v. Hatch*, 54 S.W.3d 623, 630 (Mo. App. W.D. 2001) ("Allowing [Appellant] a mistrial 'would be an open invitation to any defendant to engage in similar conduct and thereby prevent his trial from reaching a conclusion, and it would place a premium on a defendant's own misconduct.'") (quoting *State v. McGinnis*, 441 S.W.2d 715, 718 (Mo. banc 1969)). Further, Appellant's contention that the court's handling of his outburst "unfairly portrayed him as a violent individual incapable of self-control" falls short, given that the court immediately dismissed the jury for lunch and did not impose additional restraints on Appellant during the remainder of the case.

To the extent that any prejudice resulted from Appellant's conduct, it was of his own making, and he is not therefore entitled to a mistrial. *State v. Eaton*, 563 S.W.3d 841, 847 (Mo. App. E.D. 2018). On this record, the trial court acted within its discretion in overruling Appellant's motion for a mistrial based on his disruption of the court proceedings.

Point III is denied.

### Point IV

In his last point on appeal, Appellant argues that the trial court erred in denying his request for a voluntary manslaughter instruction. Specifically, Appellant alleges that he introduced sufficient evidence that the shooting of Victim was the result of sudden passion to support the submission of an instruction on the lesser-included offense.

Ordinarily, "[t]his court reviews *de novo* a trial court's decision whether to give a requested jury instruction." *State v. Jackson*, 433 S.W.3d 390, 395 (Mo. banc 2014). If the statutory requirements for giving such an instruction are met, a failure to give the requested instruction is

9

reversible error. *Id.* (citing *State v. Derenzy* 89 S.W.3d 472, 475 (Mo. banc 2002)). When reviewing a trial court's decision whether to give a requested jury instruction for a lesser-included offense, "[t]he evidence is viewed in the light most favorable to the defendant and, when in doubt, the court should instruct on the lesser-included offense." *State v. Rice*, 573 S.W.3d 53, 63 (Mo. banc 2019). While we will not remand for a new trial in the absence of prejudice, prejudice is presumed when a trial court fails to give a requested lesser included offense instruction that is supported by the evidence. *Jackson*, 433 S.W.3d at 395 (citing *State v. Redmond*, 937 S.W.3d 205, 210 (Mo. banc 1996)).

Voluntary manslaughter is a lesser-included offense to first-degree murder by statute. Sections 565.029.2 and 556.046.1(2).

> A trial court is required to instruct on a lesser included offense if the evidence, in fact or by inference, provides a basis for both an acquittal of the greater offense and a conviction of the lesser offense, and if such instruction is requested by one of the parties or the court.

*Redmond*, 937 S.W.2d at 208 (citing § 556.046 and *State v. Mease*, 842 S.W.2d 98, 110-11 (Mo. banc 1992)). Voluntary manslaughter is defined as causing the death of another person under circumstances that would constitute murder in the second degree, except that the death was caused "under the influence of sudden passion arising from adequate cause[.]" *Id.*; Section 565.023. The defendant has the burden of injecting the issue of influence of sudden passion arising from adequate cause. *Redmond*, 937 S.W.2d at 208.

"Sudden passion" is defined as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." *Id.*; Section 565.002(15). "Adequate cause" is "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control[.]" *Redmond*, 937

10

S.W.2d at 208; Section 565.002(1). The offense must have been committed in sudden passion, and not after there had been time for the passion to cool. *Redmond*, 937 S.W.2d at 208 (citing *State v. Fears*, 803 S.W.2d 605, 609 (Mo. banc 1991)). "Words alone, no matter how opprobrious or insulting, are not sufficient to show adequate provocation." *Id.*

Appellant was required to submit to the court proposed instructions and verdict forms. Rule 28.02(b). [3] Appellant's proposed jury instructions failed to describe the charged offenses accurately. [4] Therefore, it was not error for the trial court to have refused the specific instruction proposed by Appellant. *See Derenzy*, 89 S.W.3d at 475 ("A trial court does not commit error by rejecting an instruction that either misstates the law or would have confused the jury.")

Appellant's failure to submit a correct instruction under these circumstances renders his claim of error unpreserved. *Derenzy*, 89 S.W.3d at 475 (citing *State v. Wurtzberger*, 40 S.W.3d 893, 897 (Mo. banc 2001)). However, "[u]npreserved claims of error may still be reviewed under Rule 30.20 if manifest justice would otherwise occur." *Wurtzberger*, 40 S.W.3d at 898. Rule 30.20 provides for plain error review. We exercise our discretion to review for plain error only where the appellant establishes "facially substantial grounds for believing that the trial court's error was evident, obvious, and clear, and that manifest injustice or a miscarriage of justice resulted." *State v. Payne*, 488 S.W.3d 161, 163 (Mo. App. E.D. 2016). "Plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome-determinative." *Id.* (citing *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)).

---

[3] All Rule references are to the Missouri Supreme Court Rules (2023), unless otherwise indicated.

[4] To submit a voluntary manslaughter jury instruction, a defendant's second-degree murder jury instruction must include, as an element of second-degree murder, a third paragraph finding that the defendant did not kill under the influence of sudden passion arising from adequate cause. *State v. Mack*, 624 S.W.3d 436, 455 (Mo. App. E.D. 2021) (citing *State v. Boyd*, 913 S.W.2d 838, 842 (Mo. App. E.D. 1995)). The separate voluntary manslaughter instruction is then patterned on MAI-CR 3d 314.08, tracking the verdict director for murder in the second degree, but without the reference to "sudden passion." *Id.* Here, Appellant's second-degree murder jury instruction did not include the third paragraph on sudden passion.

Here, Appellant cannot demonstrate facially substantial grounds for believing that the trial court committed evident, obvious, and clear error because the trial court would not have erred in refusing to instruct the jury on voluntary manslaughter even if Appellant had proffered a correct jury instruction. There is no evidence tending to show that Appellant was subject to a sudden passion, nor is there evidence of an adequate cause from which sudden passion could have resulted. Appellant suggests that a sudden passion could have arisen in Appellant from a supposed "chaotic situation outside of the store." However, the evidence, even when viewed in the light most favorable to giving the instruction, does not support the characterization of the situation in front of the store as "chaotic."[5] While there was an argument in front of the store prior to Appellant arriving, the argument did not involve either Appellant or Victim, it had ended prior to Appellant's arrival, and there is no evidence that Victim or someone acting on behalf of Victim provoked Appellant so as to give him adequate cause to shoot and kill Victim.

Further, Appellant is unable to show any prejudice from the trial court's denial of his request to instruct the jury on voluntary manslaughter. "The failure to give a different lesser included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and one lesser-included offense are given and the defendant is found guilty of the greater offense." *State v. Johnson*, 284 S.W.3d 561, 575 (Mo. banc 2009) (emphasis omitted) (citing *State v. Glass*, 136 S.W.3d 496, 515 (Mo. banc 2004)). Here, the jury was instructed on first-degree murder and on two lesser included offenses—second-degree murder and involuntary manslaughter—and the jury convicted Appellant of first-degree murder.

Point IV is denied.

---

[5] Critically, Appellant supports this contention not with a citation to the transcript, but to his motion for a new trial.

## Conclusion

For the reasons set forth above, the judgment is affirmed.

_____
Renée D. Hardin-Tammons, J.

Kurt S. Odenwald, P.J., and
Michael S. Wright, J., concur.

13